**William J. SCOTT et al., Appellants,**

v.

**Mary R. WILLIAMS et al., Appellees.**

**No. 8742.**

Court of Civil Appeals of Texas, Texarkana.

Aug. 26, 1980.

Rehearing Denied Oct. 7, 1980.

Thomas K. Boone, Wayne A. Johnson, II, Dalton, Moore, Forde, Joiner & Stollenwerck, Dallas, for appellants.

C. Thomas Wesner, Jr., Wesner, Wylie & Pleasant, Dallas, for appellees.

CORNELIUS, Chief Justice.

Plaintiffs, Mary R. Williams, Doris Wiese, Linda Austin, Jean Sheerin, Andrea Lee Shuey, and Jennifer Lucas, are owners of apartments in Belle Meadow, a condominium regime established pursuant to the Texas Condominium Act, Tex.Rev.Civ.Stat. Ann. art. 1301a. They brought this suit against William Scott, Austin Embree, Rita Devine, Jack Devine, Annette Lacy and Maurine Thompson, alleging that the defendants, who also own apartments in Belle Meadow and additionally serve as members of the regime's board of administration, had controlled the affairs of the regime for their own personal gain and had mismanaged its affairs and misapplied its funds. The suit sought damages, as well as an injunction against future acts of mismanagement or misapplication of funds.

Belle Meadow's by–laws adopted pursuant to Article 1301a provide that each owner of an apartment in the condominium regime becomes a member of the council of co–owners and has a vote in the same proportion as his or her ownership bears to the total units in the regime. The board of administration is composed of the president, vice president and secretary–treasurer, who are elected by the council of co–owners, and is given the authority to manage the regime.

Belle Meadow, was converted from an apartment complex into a condominium regime in early 1974. There were 39 purchasers of apartments. Most of the purchasers were absentee landlords who purchased several individual units for use as rental property. Only four of the purchasers in 1974 were owner–occupants. The defendants in this case are investor owners who, because of the large number of apartments they own, were able to dominate the council of co–owners and secure control of the board of administration. Plaintiffs' petition complained that the defendants had taken advantage of their positions on the board to run the regime for their own personal benefit and had used Belle Meadow funds to benefit their private leasing operations. The other owners in Belle Meadow were not joined in the suit, either as defendants or plaintiffs, but the plaintiffs alleged in their petition that they were bringing the suit for themselves individually and as "equitable representatives of the co–owners of Belle Meadow." The defendants objected, by special exceptions and various other pleadings, to the absence of the other owners, but the point was overruled by the trial court and the cause went to trial before a jury. Based upon jury findings, the trial court entered judgment which:

(1) awarded each of the plaintiffs her proportionate part of total damages which the jury found had been suffered by the condominium regime by reason of the defendants' wrongful acts and omissions;

(2) awarded the plaintiffs, as equitable representatives of Belle Meadow, judgment for several specific amounts of money, and provided that those sums would be placed in interest bearing accounts to be expended by the board of administration for the repair and maintenance of the commonly owned areas of the condominium regime;

(3) awarded each plaintiff her proportionate part of a total sum found by the jury as exemplary damages arising from the defendants' willful and malicious acts;

(4) enjoined the defendants from committing any of a long list of improper and illegal acts regarding administration of the regime;

(5) mandatorily enjoined the defendants to require certain acts deemed necessary for the proper and lawful administration of the condominium regime in accordance with the Texas Condominium Act, and for the preservation of the rights of the owners thereof; and,

(6) awarded attorney's fees of $11,000.00 directly to plaintiffs' attorneys.

Defendants have assigned 49 points of error. They first contend that the plaintiffs lacked standing to maintain the action for damages on behalf of the absent owners. We agree.

A condominium regime results in two distinct real property interests being vested in each owner of an apartment in the regime. He owns his individual unit or apartment in fee simple, and he also owns an undivided interest, together with all the other unit owners, in the common elements. Thus, the owner has two distinct estates—one in severalty and the other in common.

It should go without saying that unless authorized by statute, rule or contract, one owner of real estate in severalty cannot sue for the owner of another totally separate parcel of real estate, whether the suit be for title or for damages. 44 Tex. Jur.2d Parties § 8, p. 150. There was no allegation or proof here that the plaintiffs were contractually authorized to sue for the absent owners, and there are only two methods prescribed by statue or rule in our state which might have authorized them to represent those owners, either as to the common elements or the separate interests. One is the condominium act itself. It provides in § 16 that:

"Without limiting the rights of any apartment owner, action may be brought by the administrator or other person designated by the by-laws or council of co-owners, in either case in the discretion of the council of co-owners, on behalf of two (2) or more of the apartment owners, as their respective interests may appear, with respect to any cause of action relating to the common elements of more than one (1) apartment."

It is conceded that the method prescribed by the condominium act was not followed. The other method is the class action, assuming that plaintiffs could qualify their action as such according to the requirements of Tex.R.Civ.P. 42, but no attempt was made to bring the suit as a class action.[1] It is argued, however, that the trial court awarded damages only to the owners who were parties, and since the absent owners are not bound by the judgment, no harm has been done and the judgment on behalf of the plaintiffs for their proportionate part of the damages should be allowed to stand. We cannot agree. The judgment also granted a recovery on behalf of *all owners* against the defendants, and ordered the money expended for certain specific repairs and maintenance of the common elements. Thus, the interests of the absent owners will be affected by the judgment; yet they have not had their day in court. Even under the liberalized version of our Rule 39, especially subsections (a)(2)(i) and (a)(2)(ii),[2]

---

1. For a general discussion of the right of the condominium management association or individual members of a condominium project to bring suit on behalf of the other owners, see Annotations in 69 A.L.R.3d 1148 and 72 A.L.R.3d 314.

2. "(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the ac-

the absent owners should have been made parties. In addition, allowing the plaintiff to proceed to judgment over the objections of the defendants violated the rule regarding the standing of co–tenants to sue for damage to the common property without the joinder of all co–tenants. The rule on this point has been well settled in Texas for many years: one co–tenant may not alone prosecute a suit to recover for damage to the common property, and the failure to join all co–tenants in the action renders the suit abatable. If, however, there is no objection by the defendants, the co–tenant may proceed with the action, recovering only the amount to which he shows himself entitled according to his proportionate interest in the common property. But if the absence of the other co–tenants is objected to, they must be joined, either as plaintiffs or defendants, or the suit should be dismissed. *Hicks v. Southwestern Settlement & Development Corporation*, 188 S.W.2d 915 (Tex.Civ.App. Beaumont 1945, writ ref'd w. o. m.); 15 Tex.Jur.2d Cotenancy § 43, p. 213, and cases there cited. The controlling basis for the rule is the desire to avoid a multiplicity of suits, it being deemed unreasonable to allow multiple actions for a single trespass to the common property. *Hicks v. Southwestern Settlement & Development Corporation*, supra, and cases there cited. An exception to the rule obtains when the number or location of the co–tenants is such as to make their joinder impractical without causing great delay and inconvenience. In such a case the risk to the defendants of a multiplicity of suits is less onerous than the injury which would result to the plaintiff if the joinder of all of the co–tenants were required. We do not have that situation here, however, as it was in *Hicks v. Southwestern Settlement & Development Corporation*, supra. Thus, at the very least the absent owners here were insistable parties, requiring that upon

defendants' insistence they be joined, or the suit as to damages be abated.

 As concerns the suit for equitable relief to protect and preserve the common property, however, the plaintiffs did have standing to represent their co–tenants. *Baton v. Key Production Company*, 315 S.W.2d 59 (Tex.Civ.App. Texarkana 1958, writ ref'd n. r. e.); 15 Tex.Jur.2d Cotenancy § 43, p. 213. The court entered a lengthy injunction prohibiting various improper acts and requiring various other acts necessary to comply with faithful management practices for the condominium as required by the Texas Condominium Act. Defendants argue that the injunction is fatally defective in that it is vague, ambiguous and fails to describe in reasonable detail the acts enjoined. We have examined the injunction and find it to be sufficiently definite to be susceptible of reasonable construction and obedience. It is true that an injunction must be definite enough to inform the defendant of the acts he is prohibited from doing or is compelled to do, without calling on him for inferences or conclusions about which reasonable persons might well differ. Tex.R.Civ.P. 683; *Villalobos v. Holguin*, 146 Tex. 474, 208 S.W.2d 871 (1948). But it is also true that an injunction must be broad enough in its terms to prevent repetition of the evils sought to be stopped, whether the repetition be identical or in a somewhat different form calculated to circumvent the injunction. See *Griffith v. Mauritz*, 308 S.W.2d 599 (Tex.Civ.App. Houston 1957, no writ). The injunction here enjoined the defendants from "... running and controlling the affairs of Belle Meadow ... in order to maximize income received by co–owners from leasing apartments to tenants; [from] voting at all meetings of the Board of Administration ... on the expenditure of co–owners' funds for the repair of the interior of any apartments which are leased

tion and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of

his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff."

by the co–owners to tenants, and any vote affecting the private business interest of any [defendant] . . . must be approved by a majority of the disinterested quorum of the Council of Co–Owners." Other prohibited acts included the use of co–owners' funds to conduct the private business of any co–owner, acting as officers of the board of administration without having been duly elected, purchasing comprehensive insurance for Belle Meadow at a higher rate than required for a condominium regime because of the leased apartments, or failing to properly account for and expend co-owners' funds. The defendants were also prohibited from seeking any recovery from Belle Meadow for any losses they might have incurred as a result of this lawsuit. The mandatory portion of the injunction essentially requires the defendants to manage Belle Meadow in accordance with the Texas Condominium Act and the regime's by–laws, and to expend and account for the regime's funds in accordance with good accounting practices.

We do not find the injunction to be lacking in the requisite specificity. We find the plaintiffs had standing to seek equitable relief to protect and preserve the common property and that the court's injunctive order is sufficiently definite and is supported by sufficient evidence.

Because of our ruling on the points heretofore discussed, it is not necessary that we consider defendants' other points of error.

For the reasons stated, that portion of the judgment enjoining the defendants from committing certain acts and commanding them to perform certain acts is affirmed; that portion of the judgment awarding damages or attorney's fees is reversed and remanded to the trial court for a new trial.