**Thomas J. TAYLOR d/b/a Tom Taylor and Associates, Appellant,**

**v.**

**GWR OPERATING COMPANY, a Texas Corporation, Appellee.**

No. 01–90–01087–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 21, 1991.

Rehearing Denied Dec. 19, 1991.

Michael B. Watson, Abilene, for appellant.

Hugh P. Touchy, Richard L. Ellison, Ronald G. Byrnes, Houston, for appellee.

Before SAM BASS, O'CONNOR and WILSON, JJ.

## OPINION

O'CONNOR, Justice.

This Court is asked to determine three questions. Is a nonoperating interest owner a "consumer" for purposes of the Deceptive Trade Practices Act? No. Does an operating interest owner owe a fiduciary duty to a nonoperating interest owner? Yes, if there is a joint venture between them. Does a duty of good faith and fair dealing, owed under a joint operating agreement, give rise to a separate cause of action for breach of that duty? No. We reverse and remand.

This appeal is from a partial summary judgment granted to GWR Operating Company (GWR), on counterclaims asserted by Thomas J. Taylor d/b/a Tom Taylor and Associates (Taylor). After granting the partial summary judgment the trial court severed it from the suit, and it became final.

### 1. Fact summary

On June 7, 1984, Taylor and L & B Oil Company, Inc. (L & B), executed a letter agreement and a joint operating agreement by which drilling operations were started in Grimes County. Under the agreement, L & B was the designated operator and Taylor was a nonoperator. On October 1, 1984, Taylor and L & B executed a second joint operating agreement by which additional operations were begun in the same county. On July 8, 1985, Taylor and L & B executed a third agreement and a joint operating agreement, relative to additional properties in Grimes and Madison counties. GWR later succeeded to the interest of L & B as the designated operator and Taylor remains a nonoperator. Each of the agreements was entered into for drilling oil and gas wells, and each agreement sets out the method in which expenses incurred in the operations would be charged to the joint account.

When Taylor refused to pay for his share of the costs of drilling the wells, GWR sued Taylor, alleging causes of action on a sworn account, breach of contracts, foreclosure of operator's lien, breach of fiduciary duty, and conversion. Taylor counterclaimed for overcharging, alleging violation of the Deceptive Trade Practices Act (DTPA),[1] breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing.

GWR filed a motion for partial summary judgment seeking judgment on Taylor's counterclaim on the following grounds:

1. a nonoperating interest owner is not a "consumer" within the meaning of the Deceptive Trade Practices Act,

2. an operating interest owner does not owe a non-operating interest owner a fiduciary duty, and

3. Texas law does not recognize a duty of good faith and fair dealing under a joint operating agreement.

The court granted GWR's motion and severed the counterclaim from the original suit. In the summary judgment, the trial

1. TEX.BUS. & COM.CODE ANN. § 17.45(4) (Vernon     1987).

court said that it granted GWR's motion "on all issues."

■ When a plaintiff moves for summary judgment against a defendant's counterclaim, the plaintiff must negate one or more of the essential elements of the defendant's counterclaim. *Adams v. Tri–Continental Leasing Corp.*, 713 S.W.2d 152, 153 (Tex.App.—Dallas 1986, no writ); *Holmes v. Dallas Int'l Bank*, 718 S.W.2d 59, 60–61 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). Here, because Taylor asserted three causes of action in his counterclaim, GWR was required to disprove at least one element in each cause of action.

### 2. Consumer status under DTPA

In point of error one, Taylor asserts the trial court erred in granting GWR's motion for summary judgment on his cause of action based on the DTPA. Taylor argues the cases cited by GWR, in its motion for partial summary judgment, do not establish as a matter of law that Taylor is not a "consumer" under the DTPA.

■ A party bringing an action under DTPA must prove that it is a consumer. *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex. 1985); *Holland Mortgage & Inv. Corp. v. Bone*, 751 S.W.2d 515, 517 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Consumer is defined at section 17.45(4) of the Texas Business and Commerce Code, which states:

> (4) "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

"Services" include "work, labor, or services furnished in connection with the sale or repair of goods." Tex.Bus. & Com.Code Ann. § 17.45(2) (Vernon Supp.1987). The goods or services sought or acquired by the consumer must form the basis of the DTPA complaint. *Cameron v. Terrell &*

*Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981).

In its motion for partial summary judgment, GWR cited *C & C Partners v. Sun Exploration and Production Co.*, 783 S.W.2d 707 (Tex.App.—Dallas 1989, no writ) and *Hamilton v. Texas Oil and Gas Corp.*, 648 S.W.2d 316 (Tex.App.—El Paso 1982, no writ) to support its contention that Taylor is not a consumer. Here, as in those cases, the services rendered by the operator included directing and controlling all operations, paying costs, and providing management, bookkeeping and supervision of the mineral prospects.

In *Hamilton*, the court reasoned there was a consolidation of interests between the operator and the nonoperator, and the operator was not an employee of the nonoperator. 648 S.W.2d at 322. The court characterized the operator as a "front man" incurring debts for the others, for which it would later be entitled to reimbursement. *Id.* Both the *Hamilton* and *C & C Partners* courts held that when the operating interest owners merely incurred debts for the others, as a matter of law, the nonoperating interest owner was not a "consumer" of services as contemplated by the DTPA. *Id.; C & C Partners*, 783 S.W.2d at 713.

Taylor argues, however, that the determining factor in both *C & C Partners* and *Hamilton* was that there was *no* evidence that either operator made a profit on the goods or services forming the basis of the nonoperator's cause of action. Here, Taylor argues that the affidavits attached to his response to GWR's motion for partial summary judgment assert that GWR intentionally and knowingly made a profit on the transactions.

The *Hamilton* court stated, however, that the fact that the operator did not intend to make a profit for what it did was only "a factor to be weighed." 648 S.W.2d at 322. Finding *C & C Partners* and *Hamilton* dispositive, we overrule Taylor's point of error one.

### 3. Fiduciary duty

In point of error two, Taylor asserts the trial court erred in granting GWR's motion for summary judgment on his cause of action based on breach of fiduciary duty.[2] Taylor argues that GWR acknowledged the existence of a fiduciary relationship between the two in its pleadings.

In its original petition and in its first amended original petition, GWR asserted that the three agreements contemplated a fiduciary relationship between the two parties, and Taylor breached his duty to GWR.[3] Taylor contends that by alleging a fiduciary relationship in its pleadings, GWR made a judicial admission which requires no proof by Taylor, or, if not a judicial admission it is at least an ordinary admission that creates a fact issue. *Kirk v. Head*, 137 Tex. 44, 152 S.W.2d 726, 729 (1941); *Davis v. Quality Pest Control*, 641 S.W.2d 324, 329 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Whether GWR's pleadings of fiduciary relationship are a judicial admission or merely an ordinary admission, Taylor contends they preclude a summary judgment on his cause of action for breach of fiduciary duty.

In response, GWR argues that a party cannot judicially admit a legal relationship not recognized under Texas law. GWR argues that the *Kirk* and *Davis* decisions stand only for the proposition that parties may only admit facts or legal conclusions, not legal relationships.

■ The question of whether there is a fiduciary duty is a question of law for the court, not a fact question for the jury. *Fuqua v. Taylor*, 683 S.W.2d 735, 737 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). Although the ultimate decision on whether there is a fiduciary duty is a question of law for the court, the facts that give rise to a fiduciary duty are questions for the fact finder. *Id.* at 737–38.

■ GWR contends there can be a fiduciary relationship in an operating agreement only if there is a joint venture and cites *Ayco Development Corporation v. G.E.T. Service Co.*, 616 S.W.2d 184, 186 (Tex. 1981), *Rankin v. Naftalis*, 557 S.W.2d 940, 945 (Tex.1977) and *Hamilton*, 648 S.W.2d at 320–21. The elements of a joint venture are (1) mutual right of control, (2) community interest, (3) the sharing of profits as principals, and (4) the sharing of losses, costs or expenses. *Ayco*, 616 S.W.2d at 186. Neither *Ayco* nor *Rankin* are directly relevant to this case. *Ayco* was a suit by a third party against the operator. The court held the nonoperator was not liable for debts of the operator. 616 S.W.2d at 186. *Rankin* was a suit between an operator and nonoperator for profits from a well that was outside the scope of their agreement. 557 S.W.2d at 943.

Of the three cases, the *Hamilton* case is the closest to our facts. In *Hamilton*, the operator sued the nonoperator for drilling costs, and the nonoperator counterclaimed. After a trial to the jury, which returned most answers favorable to the nonoperator, the trial court entered judgment for the nonoperator. Both parties appealed. In his appeal, the nonoperator claimed, as a matter of law, there was a fiduciary relationship between the operator and the nonoperator. 648 S.W.2d at 320. The *Hamilton* court held there was *no* joint venture because the operator had full control of all operations and the joint operating agreement provided that the parties were severally, not jointly, liable. *Id.*

---

**2.** Black's Law Dictionary states that the term "fiduciary" is derived from the Roman law, and means (as a noun) a person holding the character of a trustee in respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires. A person having a duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking. BLACK'S LAW DICTIONARY 563 (5th ed. 1979). One court defined fiduciary relationship as a legal relationship created by law or contract, where equity implies confidence and reliance in consummation of the purposes for which the relationship was created. *Peckham v. Johnson*, 98 S.W.2d 408, 416 (Tex.Civ.App.—Fort Worth 1936), *aff'd*, 132 Tex. 148, 120 S.W.2d 786 (1938).

**3.** GWR's original petition stated: "Each of the Agreements set forth ... contemplate the existence of a fiduciary relationship between [GWR and Taylor] which gives rise to the duty of fair dealing as between the Parties."

■ Our case is distinguishable. Here, the matter is raised as a fact issue, not as a point a party is attempting to establish on appeal as a matter of law. Although the question of fiduciary relationship is a question of law, the underlying elements of fiduciary duty are questions for the fact finder. *Fuqua*, 683 S.W.2d at 737–38. Because GWR plead that a fiduciary relationship existed between them, and GWR did not disprove it as a matter of law, at a minimum, there is a fact question on that issue.

We sustain point of error two.

### 4. Good faith and fair dealing

In point of error three, Taylor asserts the trial court erred in granting GWR's motion for summary judgment on his cause of action based on breach of the duty of good faith and fair dealing. Taylor argues that the duty of good faith and fair dealing arises out of breach of fiduciary duty, the supreme court's decision in *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716, 725 (1945), and the Texas Business and Commerce Code.

Taylor argues that the supreme court recognized a duty of good faith between the operator and the nonoperator in *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716, 725 (1945). In *Luling Oil*, the supreme court said that the operator was obligated to operate the property in good faith because it had complete control of operations. *Id.* We agree with that statement. We do not agree, however, that by that statement the supreme court recognized a separate cause of action, apart from the contract between the parties. The contract gives Taylor, the nonoperator, the right to audit. Thus, any dispute regarding overcharging can be resolved under the terms of the contract.

■ In the recent case of *Texstar North America, Inc. v. Ladd Petroleum Corp.*, 809 S.W.2d 672 (Tex.App.—Corpus Christi 1991, writ denied), the Corpus Christi Court of Appeals held that parties in a joint operating agreement do not generally owe each other the duty of utmost good faith and fair dealing. *Id.* at 677. We agree with that holding.

■ Last, Taylor argues that GWR overcharged for goods sold and services rendered to the joint account, which breached the duty of good faith and fair dealing imposed by Tex.Bus. & Com.Code Ann. § 1.203 (Tex.UCC) (Vernon 1968). Taylor's counterclaim, however, does not contain any allegations to support the application of a "statutory duty" imposed by the Texas Uniform Commercial Code. Taylor does not contend he was a buyer of goods or that he received goods which did not conform to the duties and obligations imposed on sellers in chapter 2 of the Texas Uniform Commercial Code.

We overrule point of error three.