### RICHARDSON LIFESTYLE ASSOCIATION, Appellant,

v.

### Georgia E. HOUSTON, Mack Huffaker, Elizabeth Harmon, Virgil William Hughes, William Shames, Robert Yen, Jen Lee Rogers, You Hua Wu, Daniel Lee, and Jimmy B. Cox, Appellees.

No. 05–91–01907–CV.

Court of Appeals of Texas, Dallas.

April 27, 1993.

Rehearing Denied June 8, 1993.

---

4. Nor does any other summary judgment evidence address the elements of estoppel.

Ronald L. McKinney, Michael Jarrett, Dallas, for appellant.

Jerry L. Hughes, Austin, for appellees.

Before THOMAS, CHAPMAN and WHITTINGTON, JJ.

## OPINION

WHITTINGTON, Justice.

In this case, we interpret condominium bylaws regarding assessments levied upon condominium co-owners by a condominium association. Richardson Lifestyle Association (Association) appeals a judgment entered following a nonjury trial, complaining of the trial court's failure to enforce collection of a special assessment upon co-owners for roof replacement at a condominium project. The trial court held that the Association could not enforce the assessment for roof replacement because the Association had not held a vote and received the prior approval of at least seventy-five percent of the co-owners of the condominium project. Because the work was the replacement of existing roofs, we hold that the Association was not required to obtain prior approval under the condominium bylaws. Accordingly, we reverse the trial court's determination that the assessments were void and unenforceable, render judgment that the assessments were proper, and reverse and remand to the trial court to determine the proper amount of assessments and attorney's fees.

## Background

The Association is a not-for-profit corporation that exists to administer the common elements of the Richardson Lifestyle Condominiums. The condominium declaration and bylaws allow the Association to assess each condominium co-owner a pro-rata share of the costs of administering the commons. The condominium declaration places a lien on each condominium unit and its accompanying common elements. A condominium co-owner's interest in the unit may be foreclosed under the lien if assessments are not paid.

A five-member board of directors governs the affairs of the condominium. Condominium and association bylaws allow the board of directors to establish annual budgets. The board of directors makes annual assessments to the co-owners based upon the annual budget. The annual budget includes the estimated costs of repairs, maintenance, and replacements to the condominium project. The board of directors may make additional assessments if the initial assessment, based upon the annual budget, proves insufficient.

Other special assessments, not covered in the annual assessment authority as supplemented by the additional assessment authority, require approval of seventy-five percent of the association's membership and seventy-five percent of all first lien mortgage holders. Capital improvements not provided for by the annual assessment or additional assessment require such approval.

Beginning in 1984, the condominium roofs showed signs of deterioration. In September 1985, roofs covering 96 of 178 units leaked. Between 1985 and 1990, the annual cost of roof repair ranged from $13,811 to $71,645. In May 1990, a City of Richardson building inspection officer found that the roofs above two buildings violated the city housing code. Parts of the roofs, worn by exposure to the elements, were not structurally sound. The leaking roofs caused deterioration of parapet walls and the interiors of units.

The board of directors asked for bids from contractors to replace the roofs. After evaluating bids—which ranged from $216,000 to $825,000—the board of directors decided to choose a bid totalling $290,788 for replacement of the roofs and for other repairs.

In February 1989, the board of directors levied a roofing reserve assessment of $53,000. Expenses depleted the reserve by the following year. Before entering the contract with Arco Roofing Systems on July 3, 1990, the board did not hold a vote of co-owners to authorize replacement of the roofs. The contractor started replacement of the roofs and related work in July 1990 and substantially completed it in December 1990.

Georgia E. Houston and nine other co-owners (appellees) filed this lawsuit after work had begun on the roofs. The petition, contending that replacement of the roofs was a capital improvement that required a vote, alleged violation of the Deceptive Trade Practices–Consumer Protection Act (DTPA) and breach of contract. The Association filed a counterclaim, claiming that the assessment was fully authorized without an election, seeking a declaratory judgment, a money judgment for the unpaid assessment, an order of sale foreclosing its assessment liens on appellees' units, and attorney's fees. The trial court temporarily enjoined the Association from enforcing or collecting the assessment against any of the appellees pending trial on the merits.

The case was tried without a jury. Based upon the amount of money expended in replacing the roofs, the trial court found that the roof replacement was a capital improvement that required prior approval of the co-owners. The trial court: (i) permanently enjoined the Association from enforcing collection of that part of the assessment arising from roof replacement; (ii) permanently enjoined enforcement of any assessment lien related to the assessment for replacement of the roofs; and (iii) found the special assessment and liens were void where they related to the assessment for replacement of the roofs. The trial court found the Association did not engage in a deceptive act or practice or an unconscionable action under the DTPA and

did not engage in fraudulent acts. The trial court also held that the assessment, liens, and foreclosures were valid insofar as they related to carpentry, painting, professional fees, and replenishment of depleted reserve funds.

Additionally, the trial court awarded appellees attorney's fees of $13,500 through trial and additional attorney's fees if that portion of the judgment for appellees was upheld on appeal. The trial court denied the Association attorney's fees at trial but awarded the Association appellate fees if that part of the judgment rendered for the Association was upheld on appeal.

The Association complains the trial court erred by (1) enjoining the Association from enforcing collection of the assessment or an assessment lien insofar as they arose from roof replacement; (2) declaring unenforceable the assessment and its enforcement lien insofar as they were related to roof replacement; (3) denying the Association's request for a declaration of the validity of the assessment insofar as it concerned roof replacement; (4) awarding appellees attorney's fees at trial; and (5) refusing to award the Association attorney's fees at trial. Appellees, by cross-points, complain that the trial court erred by (1) not permanently enjoining the Association from enforcing collection of any portion of the special assessment and finding that a portion of the special assessment unrelated to roof replacement was proper; (2) attaching liens to their condominium units; (3) conditionally awarding the Association attorney's fees for the appeal of this case; and (4) miscalculating certain assessments.

The Association does not attack the legal or factual sufficiency of the trial court's finding that the work to replace the roofs was a capital improvement. The Association contends that it is immaterial whether the work to replace the roofs was a capital improvement. It argues that the work done to the roofs was a replacement. Since the work was a replacement, the Association argues, no approval was necessary to authorize the work.

Appellees contend this case turns on whether the work to replace the roofs was a capital improvement. They argue that the replacement of the roofs was a capital improvement that required approval under the bylaws.

## The Bylaws

The condominium declaration provides that the cost of maintenance, repair, and replacement of both general and limited common elements shall be an expense of administration of the condominium project to be assessed according to the condominium bylaws. Section 2.02 of the condominium bylaws provides as follows:

2.02 Annual and Special Assessments.

(a) The Board of Directors of the Association shall establish an annual budget in advance for each fiscal year and such budget shall project all expenses for the forthcoming year which may be required *for the purposes set forth in Paragraph (c) below.* The assessment for such year shall be established by the adoption of such annual budget by the Board of Directors of the Association. Annual assessments shall be payable at such time as the Board of Directors of the Association may require and may be payable in installments. Copies of such budget shall be delivered to each Co–Owner, although the delivery of a copy of the budget to each Co–Owner shall not affect the liability of any Co–Owner for any existing or future assessments. *Should the Board of Directors at any time determine,* in the sole discretion of said Board of Directors, *that the assessments levied are or may prove to be insufficient* to pay the costs of operation and management of the Condominium Project in any fiscal year, and from time to time to *levy such additional assessment or assessments as it shall deem to be necessary* for that purpose. The Board of Directors of the Association shall at the time of the adoption of the budget, prepare a roster of the membership and assessments applicable thereto which shall be kept in the office of the Association

and shall be open to inspection by any owner upon reasonable notice to the Board of Directors.

(b) *Special assessments, other than those described in (a) above,* may be made by the Board of Directors of the Association at any time and from time to time to meet other needs or requirements of the Association and the Condominium Project including, but not limited to, assessments for costs described in Paragraph 1.05 hereof, *capital improvements* and for the purchase or lease of an Apartment–Home in the Condominium Project pursuant to Paragraph 6.11 hereof. *However,* any such special assessment shall not be levied without the prior approval of at least *seventy-five percent (75%)* of the percentage values of all of the Co–Owners, and seventy-five percent (75%) of the holders of all first mortgages on all Apartment–Homes.

(c) Annual assessments may be used for the following purposes, as well as any other lawful purposes:

 \* \* \* \* \* \*

(vii) *The estimated cost of* repairs, maintenance and *replacements* of the Condominium Project to be made by the Association.

(Emphasis added.) The parties do not dispute that the relevant sections of the association bylaws are identical, in substance, to the relevant sections of the condominium bylaws.

**The Property Code**

 "Condominium" means a form of real property ownership that combines separate ownership of individual apartments or units with common ownership of other elements. *See* TEX.PROP.CODE ANN. § 81.-002(3) (Vernon 1984). Condominium bylaws govern the affairs of the common owners in a condominium regime.[1] *See* TEX.PROP.CODE ANN. § 81.202 (Vernon 1984). Each owner is responsible for his or her own portion of the expenses of adminis-

tering the condominium regime and of maintaining and repairing the common elements. *See* TEX.PROP.CODE ANN. § 81.-204(a)(1) (Vernon 1984). Each owner also is responsible for such other expenses as may be agreed among the common owners. *See* TEX.PROP.CODE ANN. § 81.204(a)(3) (Vernon 1984).

**Vote not required**

 As a general rule, an unambiguous contract must be interpreted by the court as a matter of law. *See Medical Towers, Ltd. v. St. Luke's Episcopal Hosp.,* 750 S.W.2d 820, 823 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Also, where neither party has alleged a contract is ambiguous, interpretation of the contract is a question of law for the court. *See Praeger v. Wilson,* 721 S.W.2d 597, 600 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). An instrument is not ambiguous simply because the parties disagree over its interpretation. *See Praeger,* 721 S.W.2d at 600.

In the present case, the Association and appellees disagree on the interpretation of the bylaws. Neither party, however, has claimed the bylaws to be ambiguous. Therefore, we will interpret the bylaws as a matter of law. *See Praeger,* 721 S.W.2d at 600.

 In the interpretation of an instrument, the primary concern of courts is to determine and give effect to the intent of the parties as expressed in the instrument. *See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). To achieve this objective, courts should examine and consider the entire writing to harmonize and give effect to all the provisions of the contract so none will be made meaningless. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 518, 243 S.W.2d 154, 158 (1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals*

---

1. Appellees acknowledge in their brief that the condominium regime, the master deed, the condominium bylaws, and the association bylaws are a contract to which all co-owners subscribe and are bound.

*Management Corp.,* 361 S.W.2d 193, 196 (Tex.1962). Language should be given its plain grammatical meaning unless it definitely appears that the parties' intent will be defeated. *Fox v. Thoreson,* 398 S.W.2d 88, 92 (Tex.1966).

■ Section 2.02(a) of the condominium bylaws provides that the board of directors is responsible for establishment of an annual budget for the condominiums. The annual budget includes expenditures for the estimated costs of replacements of the condominium project, as provided in section 2.02(c)(vii) of the condominium bylaws. Section 2.02(a) of the condominium bylaws vests the board of directors with sole discretion to determine whether levied annual assessments are insufficient to pay costs of operations and management of the condominium. When annual assessments are insufficient to pay costs, section 2.02(a) authorizes the board of directors to levy additional assessments as it finds necessary for the purposes specified in section 2.02(c).

We find the plain language of section 2.02(a) and 2.02(c)(vii) of the condominium bylaws authorizes the board to levy additional assessments for the costs of replacements without prior approval of the co-owners. Section 2.02(b), on the other hand, requires approval for special assessments levied to effect capital improvements. Section 2.02(b) expressly concerns special assessments *other than those described in (a) above.* According to the plain language of section 2.02(b), therefore, replacements, being included in section 2.02(a) and section 2.02(c)(vii), are excluded from section 2.02(b) and its approval requirement.

We conclude that if the roof work was a replacement under sections 2.02(a) and 2.02(c)(vii), it is immaterial whether the work also was a capital improvement. This plain-language interpretation gives meaning to each relevant section of the condominium bylaws. To find otherwise would steal the effect from language contained in sections 2.02(a) and 2.02(c)(vii) concerning additional assessments for replacements. Another construction also would make meaningless the language of 2.02(b) that the section applies to assessments other than those described in section 2.02(a).

The roof work was a replacement under sections 2.02(a) and 2.02(c)(vii). The contract itself provided for removal and replacement of the roofs.[2] "Replace" is defined as: "To place again; to restore to a former condition.... To take the place of." BLACK'S LAW DICTIONARY 1299 (6th ed. 1990) (citations omitted). The trial court's judgment granted injunction and declaration for appellees insofar as the assessments and liens were "for replacement of the roofs." Additionally, the trial court's findings of fact refers to the work to the roof as "replacement of the roof."

Therefore, it is immaterial whether the roof work was a capital improvement because the work was a replacement under sections 2.02(a) and 2.02(c)(vii) of the condominium bylaws. Since the work to the roofs was a replacement, the board of directors was not required to seek approval to authorize the assessment.[3] We sustain the Association's first, second, and third points of error.

### Attorney's fees

In its fourth point of error, the Association complains that the trial court erred by awarding attorney's fees to appellees because no statutory or contractual authority supports the award. In its fifth point of error, the Association complains that the trial court erred by refusing to award it attorney's fees at trial. Because our decision results in a denial of all relief requested by appellees and additional relief to be determined by the trial court on remand for the Association, we also remand the issue

2. The contract provided for: (1) removal of old roof membrane; (2) renailing loose roof deck and replacing rotten roof deck; (3) installing fiberboard insulation on top of the repaired deck; (4) installing new fiberglass roof membrane; (5) installing new metal flashing around the perimeter of the roof; and (6) reinstalling rooftop air-conditioning units on new frame. The contract also provided for: (1) replacement of rotted exterior siding and (2) repainting of the entire exterior of the complex.

3. Hence, we do not reach appellees' first, second, or third cross-points.

of attorney's fees for further consideration consistent with this opinion.

### Waiver of cross-point

In their fourth cross-point, appellees complain that the trial court erred in calculating the amount of assessments levied against Jen Lee Rogers, Daniel Lee, and William Shames. Appellees merely list the complaint with other cross-points at the beginning of their brief. The cross-point is not repeated in their brief. Nor do appellees offer any argument or authority in support of the complaint. Hence, the complaint is waived. *See* TEX.R.APP.P. 74(f); *Sanchez v. Jary,* 768 S.W.2d 933, 936 (Tex. App.—San Antonio 1989, no writ) (point overruled on ground that point was not supported by any argument or authority); *Essex Crane Rental Corp. v. Striland Constr. Co.,* 753 S.W.2d 751, 756 (Tex. App.—Dallas 1988, writ denied) (same). Accordingly, the fourth cross-point is overruled.

The trial court's judgment is reversed and rendered in part, and reversed and remanded in part.