TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00445-CV







Joaquin Zendejas, Appellant



v.



Towers of Town Lake Condominium Council of Co-Owners, Inc., 


and Camellia Belcher
, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 92-16271, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







PER CURIAM


 Appellant Joaquin Zendejas owns a unit at the Towers of Town Lake Condominium
in Austin, Texas. In 1991, he reported a roof leak to appellee Camellia Belcher, the operations
manager hired by appellee Towers of Town Lake Council of Co-Owners, Inc. ("the Council") to
manage the property. The repairs were completed in July of 1992.

 Zendejas claimed that water leaking into his unit before the repairs were performed
damaged a valuable painting. He sought damages of $5,000 for the cost to restore the painting
and of $30,000 for its diminution in value. He brought claims for negligence, gross negligence,
breach of contract, and deceptive trade practices. The trial court granted appellees' motion for
summary judgment on the deceptive trade practice claim, and later granted appellees' motion for
instructed verdict on the contract claim, so that only the negligence claims reached the jury.

 The jury found the Council and Belcher negligent but not grossly negligent and
awarded damages of $12,000. Zendejas challenges the trial court's actions regarding its deceptive
trade practices and contract claims. We will affirm in part and reverse and remand in part.



DTPA


 By point of error one, Zendejas asserts that the trial court erred in granting
appellees' motion for partial summary judgment on his Deceptive Trade Practices-Consumer
Protection Act ("DTPA") claim because appellees failed to prove that Zendejas was not a
consumer as that term is defined in the DTPA. See Tex. Bus. & Com. Code Ann. §§ 17.41-.63
(West 1987 & Supp. 1995).

 To prevail on the motion for summary judgment, the defendant must have either
disproved at least one element of the plaintiff's cause of action, or pleaded and conclusively
established each essential element of an affirmative defense. Gibbs v. General Motors Corp., 450
S.W.2d 827, 828 (Tex. 1970). The nonmovant has no duty to present contrary evidence until the
movant establishes his right to summary judgment. City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979). The standards for reviewing a motion for summary judgment
are well established: (1) the movant for summary judgment has the burden of showing that no
genuine issue of material fact exists and that he is entitled to judgment as a matter of law; (2) in
deciding whether a disputed material fact issue precludes summary judgment, evidence favorable
to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in
favor of the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management
Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 A "consumer" is one who seeks or acquires goods or services by purchase or lease. 
See DTPA § 17.45(4). To prevail under the DTPA, the plaintiff must prove that the goods or
services purchased or leased form the basis of the DTPA complaint. Cameron v. Terrell &
Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981). A plaintiff establishes his standing as a
consumer in terms of his relationship to a transaction, not by a contractual relationship with the
defendant. Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361, 368 (Tex. 1987).

 Appellees assert that Taylor v. GWR Operating Co., 820 S.W.2d 908 (Tex.
App.--Houston [1st Dist.] 1991, writ denied), controls the disposition of this point. We agree. 
The Taylor court considered whether a nonoperating working interest owner of an oil and gas
lease was a consumer in relation to the operating working interest owner. GWR Operating
Company ("GWR"), the operating working interest owner, incurred administrative expenses on
behalf of all owners and billed nonoperating owner Taylor for his share. The administrative
expenses included the cost of directing and controlling all operations, paying expenses, keeping
books, and managing and supervising the mineral prospects. Id. at 910. GWR sued Taylor when
he did not pay his share, and Taylor defended by asserting a DTPA cause of action against GWR. 
The Taylor court held that when the operating interest owner merely incurs debts for others, the
nonoperating interest owner was not, as a matter of law, a consumer of goods or services as
contemplated by the DTPA. Two other cases, C & C Partners v. Sun Exploration & Production
Co., 783 S.W.2d 707 (Tex. App.--Dallas 1989, writ denied), and Hamilton v. Texas Oil & Gas
Corp., 648 S.W.2d 316, 322 (Tex. App.--El Paso 1982, writ ref'd n.r.e.), reached the same
conclusion on the issue.

 The Council is a nonprofit corporation created pursuant to the declaration of
condominium. Under the articles of incorporation, the Council is organized to act on behalf of
the co-owners and to maintain the common areas for all owners. The Council incurs
administrative costs for labor, materials, and services in maintaining the common areas. The
condominium declaration requires that each owner contribute to a fund for the maintenance and
operation of the common elements. The fund is held for the use and benefit of the project and the
owners. In sum, a homeowners' association is only a conduit for the payment of the individual
owner's debts. Tygrett v. University Gardens Homeowners' Ass'n, 687 S.W.2d 481, 483 (Tex.
App.--Dallas 1985, writ ref'd n.r.e.). We conclude that the homeowners' association is analogous
to the operating working interest owner under an oil and gas lease and that the unit owners are
not consumers with regard to it. We overrule point of error one.

 By point of error two, Zendejas asserts that the trial court erred in granting
appellees' motion for partial summary judgment on his DTPA cause of action because appellees
failed to prove that they were not engaged in "trade" or "commerce" in providing repair services
to the owners in return for the payment of money. We need not address this point since we have
concluded that appellees negated the essential element that Zendejas be a consumer in this
transaction to prosecute a DTPA action.



Contract


 By point of error three, Zendejas asserts that the trial court erred in granting the
Council's motion for instructed verdict on his contract cause of action because the relationship
between him and the Council is contractual and the Council breached that contract. A party is
entitled to a directed verdict when reasonable minds can draw only one conclusion from the
evidence. Collora v. Navarro, 574 S.W.2d 65, 68 (Tex. 1978). The task of the appellate court
is to determine whether any evidence of probative force raises fact issues on the material questions
presented. The appellate court must consider all of the evidence in the light most favorable to the
party against whom the verdict was instructed and disregard all evidence and inferences to the
contrary. When reasonable minds may differ as to the truth of controlling facts, the question must
go to the jury. If the appellate court determines that evidence of probative value exists, the
judgment must be reversed and the cause remanded for a jury determination. Quantel Business
Sys., Inc. v. Custom Controls Co., 761 S.W.2d 302, 303-04 (Tex. 1988); Collora, 574 S.W.2d
at 68; Najera v. Great Atl. & Pac. Tea Co., 207 S.W.2d 365, 367 (Tex. 1948); Cartwright v.
Canode, 171 S.W. 696, 697-98 (Tex. 1914) (quoting Baltimore & O. R.R. v. Griffith, 159 U.S.
603, 611 (1895)).

 The issues we decide are (1) whether Zendejas had standing to bring this action;
(2) whether to characterize the condominium documents as a contract between the association and
its members; (3) if so, whether Zendejas has stated a cause of action for breach of contract, and
(4) whether Zendejas is precluded from recovering attorney's fees because his pretrial demand was
excessive.



I.  Standing

 We first consider appellees' argument that Zendejas had no standing to bring an
action against the condominium board without joining all the homeowners. Appellees base their
claim on Scott v. Williams, 607 S.W.2d 267 (Tex. App.--Texarkana 1980, writ ref'd n.r.e.), which
held that a group of condominium owners lacked standing to maintain an action for damages to
the common areas on behalf of absent owners. Id. at 270. Scott is inapposite to this case because
Zendejas is not bringing a suit to recover for damages to the common property, but to his own
property. Texas Property Code section 81.201, which authorizes a council of owners to bring suit
on behalf of apartment owners on matters related to the common elements, specifically provides
that it does not limit the right of an apartment owner to bring an action on its own behalf. Tex.
Prop. Code § 81.201(b) (West 1995).



II.  The Condominium Documents as Contract

 Zendejas claims that the declaration of condominium, the articles of incorporation,
and the bylaws are a contract between the association and its members that gives rise to
contractual liability.

 The declaration of condominium is a legal document, the recording of which creates
a condominium regime. See Tex. Prop. Code Ann. § 81.101 (West 1995). Among other things,
it distinguishes between the individually owned and commonly owned portions of the property. 
Id. § 81.102. Section 2.2(a) of the declaration provides that no owner shall repair any of the
common areas.

 The articles of incorporation were filed upon the creation of the homeowners'
association as a non-profit corporation. One expressed purpose of the association is "to protect,
preserve, maintain, operate, and repair the general common elements of The Towers of Town
Lake Condominiums, for the use, enjoyment, and benefit of the Members of the Corporation, and
to administer and govern the common affairs of the Members of the Corporation in connection
with such condominium project."

 The bylaws were also passed in conjunction with the condominium's creation. 
Section 2.2 of the Towers of Town Lake's bylaws specifically prohibits individual owners from
repairing common elements. Section 2.4 provides that:



[t]he business affairs and property of the Corporation shall be managed and
controlled by the Board of Directors. . . . The Board of Directors shall have the
duty to maintain, operate, repair and replace the common elements as described in
the Declaration . . . .



 Zendejas cites Sassen v. The Tanglegrove Townhouse Condominium Ass'n, 877
S.W.2d 489 (Tex. App.--Texarkana 1994, writ denied), in support of his claim that the
condominium documents are a contract. In Sassen, the plaintiff's unit was destroyed by fire. As
required by the declaration of condominium, the homeowners' association handled the
reconstruction of her unit. Sassen brought suit against the homeowners' association for damages
for delay in repairing the unit, and for its failure to restore her apartment to substantially the same
condition, as required by the declaration. The declaration of condominium in that case stated:


 This Declaration hereby makes mandatory the irrevocable appointment of
an attorney-in-fact to deal with the property upon its destruction or obsolescence. .
. . All of the owners irrevocably constitute and appoint the TANGLEGROVE
TOWNHOUSE CONDOMINIUM ASSOCIATION, a non-profit association . . .
their true and lawful attorney in their name, place, and stead, for the purpose of
dealing with the property upon its destruction or obsolescence as is hereafter
provided. . . . Repair and reconstruction of the improvement(s) as used in the
succeeding paragraphs means restoring the improvement(s) to substantially the
same conditions in which it existed prior to the damage, with each unit and the
general and limited common elements having the same vertical and horizontal
boundaries as before.



Id. at 491-92. The Sassen court noted that the appointment of an attorney-in-fact creates a
fiduciary agency relationship. The court found, without discussion, that the declaration created
an agency relationship between the association and its members, and held that the association was
liable for Sassen's attorney's fees since an agent's breach of its fiduciary duty constitutes a breach
of contract as well as a tort. Id. at 493.

 Appellees claim that Sassen can be distinguished because the declaration expressly
provided that the association was the agent for the homeowners. This argument is not persuasive
because, in this case, the association is no less an agent under the bylaws when it acts to repair
the common areas.

 Sassen is the only case that addresses the question of whether condominium
documents are a "contract" so that the parties who bring an action for its breach are entitled to
attorney's fees. A number of cases have either held or simply assumed that the declaration of
condominium and the bylaws are contracts between the association and its members. For
example, in Richardson Lifestyle Ass'n v. Houston, 853 S.W.2d 796 (Tex.App.--Dallas 1994, writ
denied), the court considered whether the association had to obtain prior approval of at least
seventy-five percent of the co-owners of the condominium project before collecting a special
assessment. The court used contract principles to interpret the association's bylaws, noting in a
footnote that, "Appellees acknowledge in their brief that the condominium regime, the master
deed, the condominium bylaws, and the association bylaws are a contract to which all co-owners
subscribe and are bound." Id. at 802 n.1. See also Johnson v. Fairfax Village Condo IV Unit
Owners Ass'n, 548 A.2d 87, 91 (D.C. App. 1988) (in deciding whether the association's acts in
foreclosing against unit owners were proper, the court stated that "[t]he condominium instruments,
including the bylaws and the sales agreement, are a contract that governs the legal rights between
the Association and unit owners.").

 Also, in general, the bylaws of an organization are recognized as a contract
between the organization and its members. International Printing Pressmen & Assistants Union
of N. Am. v. Smith, 198 S.W.2d 729, 736 (Tex. 1946) (constitution and bylaws were contract
between union and its members and breach thereof gave rise to contract and tort damages); see
also Milton v. Aransas Shrimp Coop., 668 S.W.2d 735, 740 (Tex. App.--Corpus Christi 1983,
writ dismissed) (plaintiff entitled to attorney's fees when cooperative terminated him in violation
of bylaws); (1) Harden v. Colonial Country Club, 634 S.W.2d 56, 60 (Tex. App.--Dallas 1982, writ
ref'd n.r.e.) (although club's bylaws were contract between it and members, plaintiff not entitled
to attorney's fees since club did not breach bylaws).

 None of these cases used a traditional contract analysis to determine if there was
an offer, acceptance, and consideration. See Smith v. Renz, 840 S.W.2d 702, 704 (Tex.
App.--Corpus Christi 1992, writ denied) (contract elements include offer, acceptance, and
consideration). We will do so.

 An offer is a manifestation of assent to enter into a bargain made by the offeror to
the offeree, conditional on a manifestation of assent in the form of some action by the offeree. 
E. Allan Farnsworth, Contracts, § 3.3 (1982). An important factor in determining whether a
proposal is an offer is whether it is clearly within the power of the offeree to close the deal by
acceptance. Id. § 3.10. A proposal made to the general public is more likely to be an offer if
only a limited number of people can accept. Id. § 3.10. The condominium documents meet the
above criteria: they offer certain benefits to the limited pool of persons who purchase a
condominium in the complex, in exchange for money and the relinquishment of some private
property rights.

 One may accept an offer by performing a requested act. See United Concrete Pipe
Corp. v. Spin-Line Co., Inc., 430 S.W.2d 360, 362 (Tex. 1968); see also Achterberg v. Gillett,
322 S.W.2d 306, 308 (Tex. Civ. App.--El Paso 1959), writ ref'd n.r.e. 325 S.W.2d 384 (Tex.
1959) (acceptance of contract signed only by party delivering it, and the execution of it by the
party accepting it, makes the contract obligatory on both parties). We conclude that the
declaration and bylaws are an offer that the unit owner accepts upon purchased of a unit.

 Finally, a joint owner is ordinarily entitled to make necessary and beneficial
improvements to the common areas and to seek contribution from other joint owners in an amount
in proportion to the other's interest. See City of Grand Prairie v. City of Irving, 441 S.W.2d 270,
273 (Tex. Civ. App.--Dallas 1969, no writ). We conclude that the individual owner's
relinquishment of the right to repair the common areas is sufficient consideration for the
association's promise to repair and maintain the common elements. (2)

 Because we find offer, acceptance, and consideration, we hold that the provisions
in the condominium bylaws prohibiting the unit owner from repairing the common areas and
requiring the Council to do so constitute a contract for purposes of Texas Civil Practice &
Remedies Code section 38.001. (3)


 

III.  Breach of Contract

 Appellees argue that even if the condominium documents are considered a contract,
Zendejas is limited to bringing a tort rather than a contract action because the gist of his action
is that they performed a duty negligently. We disagree.

 Generally, tort actions can be distinguished from contract actions in that a tort
action arises from a breach of a duty imposed by law while a contract action arises from a breach
of a duty imposed by an express or implied contract. International Printing Pressmen &
Assistants Union, 198 S.W.2d 729 at 735. If the action is not maintainable without pleading and
proving the contract, where the essence of the claim is the breach of the contract, either by
malfeasance or nonfeasance, it is an action on the contract. Id. Here, the Council's responsibility
to adequately perform the repairs arose from the duty imposed by the bylaws to repair the
common areas. Montgomery Ward & Co. v. Scharrenbeck, 204 S.W.2d 508, 510 (Tex. 1947)
(every contract carries with it duty to perform with "care, skill, reasonable expedience and
faithfulness the thing agreed to be done.").

 Appellees argue that property damage gives rise only to a tort cause of action if the
property damaged was not the subject of the contract. Appellees are mistaken. In an action for
breach of contract, one may recover actual damages that are the natural, probable, and foreseeable
consequence of the defendant's conduct. Mead v. The Johnson Group, Inc., 615 S.W.2d 685, 687
(Tex. 1981). One may recover for damage to property that is not the subject of the contract if the
damage is a foreseeable consequence of the breach. See id. (party who was not paid as promised
on sale of business could recover for loss of credit in contract action); Boorhem-Fields, Inc., v.
Burlington N. R.R. Co., 884 S.W.2d 530, 538 (Tex. App.--Texarkana 1994, no writ) (lessee of
sidetrack liable under breach of contract theory for property damage incurred in train collision). 
Here, it was foreseeable that the condominium's interior could be damaged if the roof repairs
were not timely performed.

 Furthermore, the existence of a tort cause of action does not negate the existence
of a contract cause of action. A breach may give rise to both a contract and tort claim. See
Scharrenbeck, 204 S.W.2d at 510; International Printing Pressmen & Assistants Union, 198
S.W.2d 729 at 735; cf. Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986)
(determining whether breach of contract was also a tort).

 On these facts, since the condominium documents are a contract between the
association and its members, the breach of the contract would subject the association to liability
for attorney's fees because its failure to comply with the documents would be a breach of contract
as well as a tort. Sassen, 877 S.W.2d at 493; Gill Sav. Ass'n v. Chair King, Inc., 783 S.W.2d
674, 680 (Tex. App.--Houston [14th Dist.] 1989), aff'd as modified, 797 S.W.2d 31 (Tex. 1990);
Wilson v. Ferguson, 747 S.W.2d 499, 504 (Tex. App.--Tyler 1988, writ denied). We sustain point
of error three.



IV.  Excessive Pretrial Demand

 A creditor who makes an excessive demand upon a debtor is not entitled to
attorney's fees for subsequent litigation required to recover the debt. See Tex. Civ. Prac. & Rem.
Code Ann. § 38.001-.002 (West 1986); Collingsworth v. King, 283 S.W.2d 30, 33 (Tex. 1955);
Ingham v. Harrison, 224 S.W.2d 1019, 1022 (Tex. 1949). Appellees further argue that even if
the documents are a contract, Zendejas is not entitled to attorney's fees under Texas Civil Practice
and Remedies Code section 38.001 because his pretrial demand was excessive as a matter of law. 
On September 1, 1992, Zendejas notified appellees that he sought $35,000 for damages to the
painting. Appellees did not pay the claim. (4) 

 Appellees argue that Zendejas' demand was excessive because he demanded
$35,000 in damages and the jury awarded only $12,000. See Warrior Constructors, Inc. v. Small
Business Inv. Co., 536 S.W.2d 382, 386 (Tex. Civ. App.--Houston [14th Dist.] 1976, no writ)
(creditor not entitled to recovery attorney's fees because demand for $35,000 held excessive when
debtor was liable only for $25,000). However, although a creditor's demand for a sum
appreciably greater than that later awarded may be some evidence of an excessive demand, it is
not the only criterion, especially where the amount due is unliquidated. Findlay v. Cave, 611
S.W.2d 57, 58 (Tex. 1981). Zendejas based his demand of $35,000 on an estimate by the art
dealer who had advised him on the original purchase of the painting from Sotheby's and who had
bought and sold Mexican art for twenty-five years. On this record, we cannot say that the demand
was excessive as a matter of law.



CONCLUSION


 Therefore, we reverse the judgment with regard to the contract claim and remand
that portion of the cause for proceedings consistent with this opinion. (5) The judgment is in all
other respects affirmed.


Before Justices Powers, Jones and B. A. Smith

Affirmed in Part; Reversed and Remanded in Part 

Filed: November 1, 1995

Do Not Publish

1.   Other jurisdictions have similarly found that an organization's bylaws and articles
of incorporation are contracts. See, e.g., Schraft v. Leis, 686 P.2d 865, 868 (Kansas 1984)
(bylaws are contract between corporation and its members); Black v. Glass, 438 So.2d 1359,
1367 (Ala. 1983) (bylaws are contracts); Dentel v. Fidelity Sav. & Loan Ass'n, 539 P.2d 649,
650-51 (Utah 1975); (invalid bylaw can be enforced as contract); Kennedy v. St. Joseph Mem.
Hosp., 482 N.E.2d 268, 274 (Ind. App. 1985) (hospital's bylaws are contract between it and
medical staff).
2.   One consideration in applying contract principles to the declaration of condominium
is that traditional contract remedies, such as rescission and anticipatory breach, do not
apply. For example, the association's failure to complete the repairs timely does not
entitle the unit owner to repair the roof himself. However, we note that parties may
contractually agree to limit their remedies in the event of a breach, and the limitation
does not affect the status of the document as a contract. See, e.g., Bifano v. Young, 665
S.W.2d 536, 539 (Tex. Civ. App.--Corpus Christi 1986, writ ref'd n.r.e.).
3.   A number of courts have held in other contexts that the declaration of condominium
and the bylaws are covenants that run with the land rather than contracts. For example,
bankruptcy courts have held that a condominium association's assessments cannot be rejected
because they are not executory contracts but are covenants running with the land. See, e.g., In
re Beeter, 173 B.R. 108, 115 (Bankr. W.D.Tex. 1994); In re Raymond, 129 B.R. 354, 358-59 (Bankr. S.D.N.Y. 1991). In suits involving assessments, traditional contract theory fails
for lack of consideration since in most jurisdictions homeowners are required to pay
assessments regardless of the association's completion of repairs. See Tex. Prop. Code Ann. §
81.204 (West 1995) (apartment owner is responsible for its pro rata share of collective
expenses); Pooser v. Lovett Square Townhomes Owners' Ass'n, 702 S.W.2d 226, 230-31
(Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.). These cases are distinguishable
because the discharge of a legal duty is not consideration. Martens v. Prairie Producing Co.,
668 S.W.2d 889, 891 (Tex. App.--Houston [14th Dist.] 1984, no writ). The categories of
covenant and contract are not necessarily mutually exclusive. 
4.   Appellees direct our attention to an April 22, 1993, demand letter, and a July 2,
1993, reply in the transcript. We cannot consider these documents because they were not
admitted into evidence below. Further, even if we considered them, it would not change our
holding because appellees never unconditionally tendered the funds. Staff Indus., Inc., v.
Hallmark Contracting, Inc., 846 S.W.2d 542, 548-49 (Tex. App.--Corpus Christi 1993, no
writ) (offer to settle is not an unconditional tender).
5.   The question whether a contract was breached is a question of law that the court
decides based on factual determinations made by the jury. Rodgers v. RAB Investments,
Ltd., 816 S.W.2d 543, 546 (Tex. App.--Dallas 1991, no writ); Garza v. Southland Corp., 836
S.W.2d 214, 219 (Tex. App.--Houston [14th Dist.] 1992, no writ). Every contract carries with
it the duty to perform with "care, skill, reasonable expedience and faithfulness the thing agreed
to be done." Montgomery Ward & Co. v. Scharrenbeck, 204 S.W.2d 508, 510 (Tex. 1947);
Bernard Johnson, Inc. v. Continental Constructors, Inc., 630 S.W.2d 365, 369 (Tex.
App.--Austin 1982, writ ref'd n.r.e.). If the failure to use such care results in damage to a
person or to property other than the subject of the contract, the failure is a tort as well as a
breach of contract. Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494-95 (Tex.
1991).


 In this case, the jury found that Zendejas' damage was caused by appellees' negligence. 
Negligence was defined as the failure to use ordinary care. The jury's finding of negligence
indicates that the contract was breached since the facts necessary to establish the negligence
also establish the breach. Further, the measure of property damages is the same regardless of
the cause of action asserted. Since a jury has already determined the amount of damages, our
judgment is effectively a remand for a determination of attorney's fees.


: CG Times">Do Not Publish

1.   Other jurisdictions have similarly found that an organization's bylaws and articles
of incorporation are contracts. See, e.g., Schraft v. Leis, 686 P.2d 865, 868 (Kansas 1984)
(bylaws are contract between corporation and its members); Black v. Glass, 438 So.2d 1359,
1367 (Ala. 1983) (bylaws are contracts); Dentel v. Fidelity Sav. & Loan Ass'n, 539 P.2d 649,
650-51 (Utah 1975); (invalid bylaw can be enforced as contract); Kennedy v. St. Joseph Mem.
Hosp., 482 N.E.2d 268, 274 (Ind. App. 1985) (hospital's bylaws are contract between it and
medical staff).
2.   One consideration in applying contract principles to the declaration of condominium
is that traditional contract remedies, such as rescission and anticipatory breach, do not
apply. For example, the association's failure to complete the repairs timely does not
entitle the unit owner to repair the roof himself. However, we note that parties may
contractually agree to limit their remedies in the event of a breach, and the limitation
does not affect the status of the document as a contract. See, e.g., Bifano v. Young, 665
S.W.2d 536, 539 (Tex. Civ. App.--Corpus Christi 1986, writ ref'd n.r.e.).
3.   A number of courts have held in other contexts that the declaration of condominium
and the bylaws are covenants that run with the land