The **CELOTEX CORPORATION, INC.**
and Nelson Johnson, Appellants,

v.

**GRACY MEADOW OWNERS
ASSOCIATION, INC.,**
Appellee.

No. 3-90-078-CV.

Court of Appeals of Texas,
Austin.

Feb. 3, 1993.

Rehearing Overruled March 10, 1993.

Aaron L. Jackson, Ford & Ferraro, Austin, for appellants.

Mark L. Perlmutter, Perlmutter & Reagan, L.L.P., Austin, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

Gracy Meadow Owners Association, Inc. ("Gracy Meadow"), appellee, sued the Celotex Corporation, Inc. ("Celotex") and Nelson Johnson, appellants, alleging that Celotex breached express and implied warranties and that both appellants made representations in violation of the Deceptive Trade Practices Act ("DTPA"), Tex.Bus. & Com.Code Ann. § 17.46(b) (West 1987), in connection with roofing shingles manufac-

tured by Celotex. Celotex and Johnson counterclaimed for attorney's fees, asserting that Gracy Meadow's DTPA claims were groundless and brought in bad faith. Following a jury trial, the trial court rendered judgment that Gracy Meadow take nothing from Johnson and that Johnson take nothing from Gracy Meadow. The trial court rendered judgment that Gracy Meadow recover from Celotex $205,713.17 in damages, attorney's fees, and pre-judgment interest.

■ Celotex perfected an appeal from the trial court's judgment.[1] On appeal, Celotex complains that (1) the trial court abused its discretion in allowing Gracy Meadow to file a trial amendment alleging pre-installation misrepresentations and in denying Celotex's motion for continuance; (2) the trial court erred in awarding "additional damages" under the DTPA, Tex.Bus. & Com.Code Ann. § 17.50(b) (West Supp. 1993); and (3) the trial court erred in denying Celotex's motion for judgment based on an imputed-knowledge theory. We will modify the portion of the judgment awarding Gracy Meadow additional damages and affirm the judgment as modified.

## BACKGROUND

Celotex manufactured shingles that were installed on the roof of the Gracy Meadow condominiums in 1980 and 1981. In February 1989 Gracy Meadow, on behalf of the 102 individual condominium owners, filed suit against Celotex and Johnson alleging that the shingles were defective. In its last petition submitted before trial, Gracy Meadow alleged that Celotex had breached express and implied warranties made in connection with the shingles. Further, Gracy Meadow alleged that Johnson, as an employee of Celotex, had made post-installation representations in violation of the DTPA.

During trial, Gracy Meadow submitted four trial amendments to the court, one of which was entitled "DTPA Trial Amend-

---

1. Johnson and Gracy Meadow also filed appeal bonds, thereby perfecting their own appeals from the trial court's judgment. Only Celotex, however, filed a brief in this Court complaining of the judgment. Accordingly, we dismiss Johnson's and Gracy Meadow's appeals for want of prosecution. Tex.R.App.P. 74*l*(1).

ment"; the trial court ultimately granted Gracy Meadow leave to file the amendments. In the DTPA trial amendment, Gracy Meadow alleged that "Celotex represented in their shingle wrapper and product literature that the type of shingles used on the Gracy Meadow condominiums were fifteen year shingles and had long lasting beauty. The foregoing misrepresentations are violations of DTPA Sections 17.46(b)(5) or (7)." At the time this trial amendment was allowed, both the shingle wrapper and the brochure (product literature) had already been submitted into evidence by Celotex. The shingle wrapper indicated that the shingles were "Sol–Seal/15 Shingles." The brochure stated that "Celotex Sol–Seal shingles will stay in place and look beautiful for years to come." In addition, the brochure included the following:

> The Celotex Corporation warrants Sol–Seal/15 shingles against manufacturing defects for a period of 15 years, provided installation has been made as directed on the shingle wrapper. The monetary liability of Celotex for its portion of the cost of repair or replacement shall be prorated on the basis of the number of unexpired years remaining on the warranty....
>
> This product carries a limited warranty (15 years), a copy of which will be provided at the place of purchase or upon written request....

Before submitting its DTPA trial amendment, Gracy Meadow had not made a misrepresentation claim based on *pre*-installation representations. Celotex objected to this trial amendment. After the trial court granted the trial amendment, Celotex filed a written motion for continuance alleging that it was prejudiced in preparing and maintaining its defense. The trial court overruled Celotex's motion.

The jury returned a verdict in favor of Gracy Meadow. When asked whether Celotex had misrepresented the particular standard, quality, or grade of the shingles or had misrepresented the characteristics, ingredients, uses, or benefits of the shingles, the jury returned an affirmative finding. The jury found actual damages in the

amount of $29,240 as a result of the misrepresentations. The jury refused, however, to find that Celotex had committed the misrepresentations knowingly. The jury also found that one of the condominium owners, who had learned of the defect earlier than the others, was barred by the applicable statute of limitations from recovering from Celotex in this lawsuit.

In addition, Gracy Meadow secured a post-verdict finding by the trial court that each owner suffered $286.66⅔ in damages—the proportionate share of the $29,240 total actual damages found by the jury. The court allowed Gracy Meadow to recover this amount on behalf of each of the 101 recovering owners, resulting in an actual damage award of $28,953.33. The trial court then trebled the share of damages awarded to each owner and rendered judgment that Gracy Meadow recover a total of $86,860 in actual and statutory damages. The court also awarded $115,000 in attorney's fees and $3,853.17 in pre-judgment interest.

## TRIAL AMENDMENT/MOTION FOR CONTINUANCE

■ In its first point of error, Celotex asserts a two-fold complaint. First, Celotex complains that the trial court abused its discretion in granting the DTPA-misrepresentation trial amendment. Second, Celotex complains that, after allowing the amendment, the trial court abused its discretion in denying Celotex's motion for continuance.

Rule 66 of the Texas Rules of Civil Procedure governs the procedure at issue in the present case:

> [I]f during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to

enable the objecting party to meet such evidence.

Tex.R.Civ.P. 66.

The standards for reviewing the grant of a trial amendment and denial of a motion for continuance are well established: the decision of the trial court may not be overturned on appeal except on a showing of abuse of discretion. *See Missouri–Kansas–Texas R.R. v. Alvarez*, 703 S.W.2d 367, 370 (Tex.App.—Austin 1986, writ ref'd n.r.e.) (trial amendment); *Acco Int'l Paper Stock Corp. v. Sea–Land Serv., Inc.*, 615 S.W.2d 855, 857 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) (motion for continuance). A court abuses its discretion when it makes a decision without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). In other words, if the trial court's action was arbitrary and unreasonable, such action constitutes an abuse of discretion. However, the mere fact that the trial judge decided the matter differently than an appellate court would have does not demonstrate an abuse of discretion. *Id.* at 242.

Celotex asserts two bases for concluding that the trial court abused its discretion in the present case. First, Celotex complains that the trial court abused its discretion in granting Gracy Meadow's trial amendment because Gracy Meadow was not diligent in investigating its claim and amending its pleadings before trial. Second, Celotex complains that the trial court abused its discretion by denying Celotex's motion for continuance after it had granted the trial amendment. Celotex claims it was prejudiced in maintaining its defense by this denial because Gracy Meadow's DTPA-misrepresentation claim "reshaped" the cause of action previously asserted in a way that Celotex could not have anticipated.

## 1. Lack of Diligence

Gracy Meadow does not dispute the fact that a party's diligence, or lack thereof, is a proper matter for the trial court to consider when deciding whether to grant a trial amendment. However, Gracy Meadow contends that this factor is not controlling in the present case. We agree.

Celotex cites several cases for the proposition that a party's lack of diligence is a sufficient basis for the trial court to deny such party's request for leave to file a trial amendment. *See, e.g., Robert Nanny Chevrolet Co. v. Evans & Moses*, 601 S.W.2d 411, 413 (Tex.Civ.App.—Beaumont 1980, no writ). However, these cases do not support the proposition that a party's lack of diligence, by itself, *mandates* a denial of the trial amendment. Celotex also cites *Merit Drilling Co. v. Honish*, 715 S.W.2d 87 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.), as an example of a trial court's abuse of discretion in granting a trial amendment when the party requesting such has not been diligent in asserting its claim. However, *Merit Drilling* is distinguishable in that the appellate court identified "at least four good reasons" why the trial amendment should be denied. *Id.* at 91. In other words, lack of diligence was not the *sole* basis for determining that the trial court abused its discretion in granting the trial amendment.

In the instant case, conflicting evidence was presented in the trial court regarding Gracy Meadow's alleged lack of diligence. Celotex contends that Gracy Meadow was not diligent in pursuing its claim because Gracy Meadow knew of the wrapper containing the alleged misrepresentation "well before trial." Celotex informed the court that this wrapper was provided to Gracy Meadow's counsel in connection with a deposition taken in a previous lawsuit involving Gracy Meadow's counsel and Celotex. As Celotex conceded, however, the previous case involved a dispute that arose in 1978 or 1979. The wrapper at issue in the present case was used in 1980 and 1981. Based on the conflicting evidence presented, the trial court was entitled to conclude that Gracy Meadow was not aware that the wrapper at issue in the present case was the same wrapper at issue in the previous case and that Gracy Meadow had been sufficiently diligent regarding this aspect of its claim.

Accordingly, we conclude that under the facts of this case, the trial court considered the issue of diligence in granting the trial amendment and was entitled to conclude that this issue was not dispositive.

### 2. Prejudice

When the granting of a trial amendment would prejudice a party in maintaining its defense, the amendment should be denied or, alternatively, a motion for continuance should be granted to enable the objecting party to respond. See Tex.R.Civ.P. 66. An appellate court must reverse the trial court's decision to grant the amendment (or deny the continuance) when "1) the opposing party presents evidence of surprise or prejudice, or 2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face." *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990).

█ In the present case, Celotex combines both bases by asserting that "[o]n the issue of 'surprise,' the only evidence in the record is that, despite due diligence in conducting discovery, the representation amendment raised issues which [Celotex] could not reasonably have anticipated based on [Gracy Meadow's] pleadings before trial." However, the mere fact that Celotex was surprised by the amendment is not sufficient grounds for denying the amendment or granting the continuance. Celotex must demonstrate the existence of a defense that could be established by evidence that had not been procured because it was not needed until after the amendment was allowed. See *Texas Employers Ins. Ass'n v. Sanders*, 265 S.W.2d 219, 221 (Tex.Civ.App.—Texarkana 1954, writ ref'd n.r.e.). In other words, Celotex must show prejudice.

In its motion for continuance, Celotex asserted:

Allowance of the previously mentioned trial amendments prejudices [Celotex] in [its] defense upon the merits. [Celotex is] not ready for trial on the issues raised for the first time in the trial amendments. Discovery that must be done on these issues includes the following:

    1) depositions of shingle installers;

    2) depositions of shingle distributors or wholesalers;

    3) depositions of other persons who might have knowledge of whether Celotex made the alleged representations and warranties.

Celotex argues in its brief that the depositions of shingle installers, distributors, wholesalers, and other persons were necessary to determine whether Celotex made such representations. We disagree. Gracy Meadow does not rely on any oral representations regarding the shingles. Its cause of action is based solely on the written words stated in the brochure and on the wrapper. There is no dispute as to the words used in these documents; rather, the dispute centers on the meaning of those words.[2]

Regarding the meaning assigned to the words used in the documents, Celotex argues that depositions of the installers, distributors, and wholesalers were necessary to determine "what effect the representations might have had." Celotex argues that such discovery "might well have shown that no one involved in the sale, distribution, and installation of the shingles even paid much attention to the 'wrappers' in which the materials were delivered." However, we determine that this testimony is immaterial for two reasons. First, the effect such representations may have had on others is immaterial to the jury's determination of the meaning of the representations. The applicable standard for the jury is "whether the statement has a tendency to deceive the ignorant, the unthinking, and the credulous who do not stop to analyze but are governed by appearances and general impressions." *RRTM Restaurant Corp. v. Keeping*, 766 S.W.2d 804, 808

---

**2.** Celotex does not challenge the sufficiency of the evidence to support the jury's findings. Celotex simply complains that it should have been given more time to develop additional evidence. Accordingly, we do not address whether the language in the brochure and wrapper could reasonably be construed as misrepresentations that violate either section 17.46(b)(5) or section 17.46(b)(7) of the DTPA.

(Tex.App.—Dallas 1988, writ denied) (citing *Spradling v. Williams*, 566 S.W.2d 561, 562–63 (Tex.1978)); *cf. Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 548 (Tex.1986) (determining meaning of representation made in warranty is fact issue for jury). This is an objective standard. Accordingly, testimony of those involved in the sale, distribution, and installation of the shingles would not assist the jury in making its determination.

■ Second, although Celotex claims such testimony was necessary to determine whether the representations were the producing cause of damages to Gracy Meadow, in fact this evidence is relevant only to establish reliance. Under the DTPA, however, reliance is not an element of producing cause. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985). In *Weitzel* the court indicated that the mere finding that a representation was made and that damage resulted because of noncompliance is sufficient to establish producing cause; a finding of reliance on such representation is not required. *Id.* Acknowledging that reliance is not a factor, Celotex argues that, in order to establish producing cause, the testimony was still necessary to determine whether the alleged misrepresentations played a role in the selection of the shingles for use in the condominium project. We conclude, however, that the testimony of shingle installers, distributors, and wholesalers is immaterial to determining whether the *purchaser* of the shingles considered the representations in selecting them.

Although we recognize that a misrepresentation claim is separate and distinct from a cause of action for breach of express or implied warranty, we conclude that Celotex did not identify any additional evidence in its motion for continuance that would have been material to the disposition of the newly pleaded cause of action. In short, Celotex did not show prejudice. In light of that, we cannot say that the trial court abused its discretion in denying Celotex's motion for continuance.[3] We overrule Celotex's first point of error.

## ADDITIONAL DAMAGES

■ In its second point of error, Celotex complains that the trial court erred in awarding "additional damages" under Gracy Meadow's DTPA misrepresentation claim. Under the DTPA, a consumer who prevails is entitled to limited additional damages even when, as here, the violation is not found to have been committed knowingly. Section 17.50(b) provides in part:

In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000....

DTPA § 17.50(b). The amount of actual damages found by the jury was $29,240. The trial court determined that the proportionate share of damages for each owner was $286.66⅔. Because that amount was less than $1,000, the court then trebled each recovering owner's share pursuant to section 17.50(b)(1) and rendered judgment awarding additional damages on that basis. Celotex argues that the trial court erred in awarding such additional damages. We agree.

■ The subject of this lawsuit was defective roofing shingles. The roof, which necessarily includes the shingles used on the roof, is a "common element" in the condominium. *See* Tex.Prop.Code Ann. § 81.002(6)(B) (West 1984). "An owner of an apartment in a condominium regime shares ownership of the regime's common elements with the other apartment owners." Tex.Prop.Code Ann. § 81.107 (West 1984). In other words, each owner has an

---

**3.** Relying on *Bell v. Meeks*, 725 S.W.2d 179, 180 (Tex.1987), Gracy Meadow argues that "it is not an abuse of discretion for a court to find that there is no practical difference in the factual development between a breach of implied warranty claim and a DTPA representation claim." We do not address, however, whether there could *ever* be a practical distinction between a breach-of-warranty claim and a misrepresentation claim such that a court might abuse its discretion in denying a continuance after a trial amendment had been allowed. We simply conclude that under the facts of the present case, the trial court did not abuse its discretion.

undivided ownership interest in all common elements.

Gracy Meadow initiated this lawsuit on behalf of the 102 individual condominium owners. Gracy Meadow was entitled to bring this suit on their behalf pursuant to section 81.201(b) of the Property Code:

A council of owners of a condominium regime may institute litigation on behalf of two or more apartment owners concerning a matter related to the *common elements* of two or more apartments.... This subsection does not limit the right of an apartment owner to bring an action in the apartment owner's own behalf.

Tex.Prop.Code Ann. § 81.201(b) (West 1984) (emphasis added). Gracy Meadow was entitled to bring this lawsuit because the subject of the complaint was damage to a common element, thus resulting in common harm to each condominium owner. There was no allegation or proof that any individual condominium owner sustained any harm except by virtue of his or her undivided interest in the common elements of Gracy Meadow. In other words, this lawsuit was a collective claim based on collective harm, not individual harm.

■ A single, collective harm is properly remedied by a single, collective award of damages. Such an award may not, we believe, be treated as 101 separate damage awards and then trebled individually pursuant to section 17.50(b) of the DTPA. Where an individual co-tenant, e.g., a condominium owner, prosecutes a suit to recover damage to the common property, Texas law will allow the individual, in certain circumstances, to "proceed with the action, recovering only the amount to which he shows himself entitled according to his proportionate interest in the common property." *Scott v. Williams*, 607 S.W.2d 267, 271 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.). In other words, the co-tenant may recover his *proportionate share* of damages. However, this recovery does not constitute a separate, individual award of damages. Rather, there is a single finding of damages to the collectively owned property and a proportionate distri-

bution based on the ownership of an undivided interest.

In the context of the present case, the damages sustained by the individual owners were suffered in common based on the ownership of an undivided interest in the common element at issue. The jury made one finding of damages for the owners as a whole. We conclude that the owners had an undivided interest in the damage award just as they had an undivided interest in the source of the damage—the roof.

Although the last sentence of section 81.201(b) of the Property Code entitles an individual owner to bring an action in his own behalf, we interpret this provision as allowing the owner to sue individually to recover his proportionate share of damages for injury done to a common element. An owner who suffers harm specific to his own property may, of course, always sue in his own behalf, even if the harm is somehow "related" to common elements. For example, an owner who incurred water damage as a result of a defective roof that leaked would be entitled to bring an individual claim, recover individual damages, and receive treble damages on the basis of his individual damage award. That is not the situation, however, in the present case. No owner claimed individual harm resulting from the defect in the roof. Accordingly, we conclude that the damage award was a collective award based on a collective harm. Although this award may be proportionately distributed based on each owner's undivided interest in the roof, it may not be segregated into individual damage awards and trebled on that basis.

We recognize that the DTPA must be construed liberally and applied to promote the underlying purpose of protecting consumers. *See* Tex.Bus. & Com.Code Ann. § 17.44 (West 1987). Our decision in the present case is consistent with this mandate. The result advocated by Gracy Meadow, on the other hand, would extend beyond protecting consumers; it would provide a windfall for the owners of Gracy Meadow.

We conclude that Gracy Meadow's recovery of additional damages should be limited

to two times that portion of the single damage award rendered by the court that does not exceed $1,000.[4] The trial court awarded $28,953.33 in actual damages. Applying section 17.50(b), the "portion of the actual damages that does not exceed $1,000" is $1,000. Two times that amount is $2,000. Accordingly, Gracy Meadow, as the designated representative of the consumers/owners, is entitled to an award of damages in the amount of $30,953.33. We sustain Celotex's second point of error.

## IMPUTED KNOWLEDGE

 In its third point of error, Celotex complains that the trial court erred in denying Celotex's motion for judgment based on an imputed-knowledge theory. The jury found that on August 15, 1983, one of the condominium owners, Susan Chelf, discovered or should have discovered that the shingles on her roof were not as represented. As a result, Chelf was barred from recovering her proportionate share of the damage award. Celotex argues that Chelf's knowledge should be imputed to Gracy Meadow, thus barring Gracy Meadow's claim in its entirety. We disagree.

Gracy Meadow does not dispute that it is the agent of the individual owners. However, the individual owners are not agents for each other or for Gracy Meadow. *See Horlock v. Horlock*, 614 S.W.2d 478, 485 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Celotex cites *First Financial Development Corp. v. Hughston*, 797 S.W.2d 286, 292 (Tex.App.—Corpus Christi 1990, writ denied), for the proposition that individual owners may act as agents for a homeowners association. In *Hughston*, however, the owner possessing knowledge that was imputed to the homeowners association was also a director of the association. There is no evidence to indicate that Chelf was either an officer or director of Gracy Meadow. Based on this distinction, we decline to impute her knowledge of the defect to Gracy Meadow or to the other condominium owners. Accord-

ingly, we overrule Celotex's third point of error.

## CONCLUSION

Based on the foregoing analysis, we modify that portion of the judgment awarding Gracy Meadow "additional damages" to reflect an award of additional damages in the amount of $2,000, for a total damages award of $30,953.33. We affirm the judgment, as modified.

---

**4.** In the present case, our result would be the same even if the individual owners had filed suit as separate plaintiffs. The trial court would still have been required to determine a single damage award, treble that portion of the award that did not exceed $1,000, and then distribute the damages proportionately.