TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-97-00138-CV






David Barr Realtors, Inc., Appellant



v.



Bhruce Sadei, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT

NO. 146,484-B, HONORABLE JOE CARROLL, JUDGE PRESIDING 






 To address certain issues raised in the motion for rehearing we withdraw our earlier opinion
and judgment issued May 21, 1998, and substitute this one in its place. 

 Appellee Bhruce Sadei sued appellant David Barr Realtors, Inc. for negligence, common
law conversion, and violations of several Texas statutes, including the Texas Deceptive Trade Practices and
Consumer Protection Act (DTPA). Appellee's claims arose out of the allegedly unlawful execution of a
residential landlord's lien. The jury found in favor of Sadei on all theories of liability. The trial court
ordered remittitur, which appellee accepted. Having prevailed on its motion for remittitur, Barr Realtors
nonetheless challenges the sufficiency of the evidence in five points of error; in a cross-point of error,
appellee claims the trial court erred in ordering remittitur. We will reverse the order of remittitur and
reinstate the judgment on the jury's verdict.


FACTUAL AND PROCEDURAL BACKGROUND

 During the relevant period, Bhruce Sadei was a residential tenant of an apartment building
managed by Barr Realtors. In the course of executing a landlord's lien on Sadei, Barr Realtors's agents
removed from Sadei's apartment two computers containing a children's on-line educational network
program, entitled "Magic One Educational Network," created by appellee. The computers remained in the
custody of Barr Realtors from July 9 to July 26, 1993. At trial, Sadei alleged that when the computers
were returned, his Magic One program, all related data, and his financial records had been permanently
erased from the hard drives of both computers.

 After viewing the evidence, the jury first determined that the loss of Sadei's programs
occurred while the computers were in appellant's possession. The jury then found for Sadei on all theories
of liability presented in the charge: negligence, common law conversion, violations of Chapter 54 of the
Texas Property Code, Chapters 31 and 33 of the Texas Penal Code, Chapters 41, 134, and 143 of the
Texas Civil Practice and Remedies Code, and a violation of the DTPA. (1) After the verdict was approved
by the trial court, Sadei elected to recover damages under the DTPA and section 54.046 of the Texas
Property Code. Accordingly, the trial court rendered judgment awarding appellee actual damages of
$50,000, mental anguish damages of $10,000, mandatory additional damages under the DTPA of $2,000,
discretionary additional damages of $118,000, and attorney's fees of $60,000. Further, pursuant to
section 54.046 of the Texas Property Code, appellee was awarded the sum of $500. The total award was
$240,500.

 Barr Realtors filed a motion for new trial, or in the alternative, a motion for remittitur. The
trial court ordered a remittitur and then granted the motion for new trial conditioned upon Sadei filing the
remittitur. In accordance with the trial court's order, Sadei submitted a remittitur totaling $160,000,
resulting in a judgment of $80,500 in his favor. This appeal followed. In five points of error, appellant
claims there is no evidence, or in the alternative, factually insufficient evidence, to support the findings and
damages. Through his cross-point of error, Sadei claims the trial court erred in ordering a remittitur.


STANDARD OF REVIEW

 In deciding a no-evidence point, we consider only the evidence and inferences tending to
support the finding of the trier of fact and disregard all evidence and inferences to the contrary. See
Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 458 (Tex. 1992); Garza v. Alviar, 395 S.W.2d
821, 823 (Tex. 1965); see generally William Powers, Jr. & Jack Ratliff, Another Look at "No
Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991). If there is more than a scintilla of
evidence to support the findings, the evidence is sufficient as a matter of law, and any challenges go merely
to the weight to be accorded the evidence. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex.
1993).

 When reviewing a jury verdict to determine the factual sufficiency of the evidence to
support a finding on which the appellee had the burden of proof at trial, we consider and weigh all the
evidence and should set aside the judgment only if the evidence is so weak as to be clearly wrong and
unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661
(Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986). 


DISCUSSION

I. THE DTPA CLAIM

 In its first point of error, appellant claims that the evidence presented at trial was both
legally and factually insufficient to support the finding that Barr Realtors violated the DTPA. In order to
succeed in a DTPA action in Texas, the plaintiff must first establish that: (1) he is a consumer; (2) the
defendant engaged in false, misleading or deceptive acts, or in an unconscionable action or course of action;
and (3) these acts constituted a producing cause of the plaintiff's damages. See Tex. Bus. & Com. Code
Ann. (DTPA) § 17.50(a)(1) (West 1987 & Supp. 1998); Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 478 (Tex. 1995).


 A.  Consumer

 Barr Realtors first asserts Sadei did not establish he was a consumer. Whether a person
is a consumer is a question of law. Hines v. Hash, 843 S.W.2d 464, 469-70 (Tex. 1992). The DTPA
defines a consumer as one who seeks or acquires by purchase or lease any goods or services from the
defendant. DTPA § 17.45(4). Goods are "tangible chattels or real property purchased or leased for use,"
id. § 17.45(1); services are defined as "work, labor or service provided or leased for use . . . ." Id. §
17.45(2).

 In addition, the Texas Supreme Court has determined these goods or services must form
the basis of the complaint. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981). It
is not necessary that the transaction be completed, only that the person has sought to purchase or lease
the goods or services. Sherman Simon Enters., Inc. v. Lorac Serv. Corp., 724 S.W.2d 13, 15 (Tex.
1987). Determination of consumer status should be made by viewing the transaction from the plaintiff's
perspective. Apple Imports, Inc. v. Koole, 945 S.W.2d 895, 898 (Tex. App.--Austin 1997, writ denied)
(citing Flenniken v. Longview Bank & Trust Co., 661 S.W.2d 705, 707 (Tex. 1983)). The inquiry into
consumer standing focuses on the consumer's relationship to the transaction itself, not to the defendant. 
Amstadt v. United States Brass Corp., 919 S.W.2d 644, 650 (Tex. 1996).

 Sadei introduced evidence that he was seeking both goods and services by negotiating new
lease terms with Barr Realtors. (2) During negotiations, he made three partial-rent payments for rent allegedly
owed. He also took a second job and attempted to get a loan in order to raise money to pay appellant. 
Essentially, Sadei sought to maintain a landlord-tenant relationship with Barr Realtors. A landlord-tenant
relationship may confer consumer status upon the tenant. E.g., Kenneth H. Hughes Interests, Inc. v.
Westrup, 879 S.W.2d 229 (Tex. App.--Houston [1st Dist.] 1994, writ denied); West Anderson Plaza
v. Feyznia, 876 S.W.2d 531 (Tex. App.--Austin 1994, no writ).

 Furthermore, an involuntary bailment was created when Sadei's computers and programs
were removed from his apartment and held at appellant's offices. Testimony revealed that Barr Realtors
charged Sadei a fee for both the exercise of the lien and the storage of his property. Once appellant
initiated this transaction, the consumer relationship continued until the computers were returned to Sadei. 
See Allied Towing Serv. v. Mitchell, 833 S.W.2d 577, 582 (Tex. App.--Dallas 1992, no writ) (holding
that when plaintiff's car was illegally removed from parking lot by defendant, who charged a fee for the
towing, consumer relationship was established under the DTPA). We conclude Sadei was a consumer
under the DTPA.


 B.  Wrongful Conduct

 Barr Realtors next claims that there was no evidence or insufficient evidence to establish
that it engaged in false, misleading, or deceptive acts, or in an unconscionable action or course of action
under the DTPA. Under Spradling v. Williams, 566 S.W.2d 561, 564 (Tex. 1978), when a defendant
commits any act listed in section 17.46(b) of the DTPA, he has per se engaged in a false, misleading, or
deceptive act, or in an unconscionable action or course of action. Specifically, when a defendant
represents that an agreement confers or involves rights, remedies, or obligations which it does not have,
or which are prohibited by law, then a deceptive act or practice has been committed. DTPA §
17.46(b)(12).

 Under the trial court's limiting instruction, the jury was to consider only evidence of whether
Barr Realtors: (1) represented to Sadei that the lease allowed appellant to hold the property seized from
his apartment until full payment of any related fees; (2) represented to Sadei that the lease allowed appellant
the right to charge or collect a fee for conducting a contractual lien; (3) refused to accept payment of rent
from Sadei; (4) improperly altered the amount owed for rent when Sadei attempted to make payments;
and (5) represented to Sadei that it would safely maintain any personal property seized.

 There was evidence that the property manager for Barr Realtors, David Perez, told Sadei
that Barr Realtors could and would exercise a landlord's lien against Sadei's property unless he paid
additional money allegedly owed to appellant. It is undisputed that at the time of these representations, Barr
Realtors did not have the legal authority to exercise such a lien under the lease. A landlord may not remove
a tenant's personal property pursuant to a landlord's lien unless there is a written agreement acknowledging
this right in either conspicuous bold print or underlining. Tex. Prop. Code Ann. §§ 54.043, .044 (West
1995). At the time the representations were made, there was no written lease agreement between the
parties which conformed to the requirements of section 54.043.

 Sadei also presented testimony that after his computers were seized, appellant's office
manager, Judy Mayes, represented that Barr Realtors had the lawful right to maintain possession of the
property until Sadei made additional payments, including charges for late fees and storage. Sadei
introduced a memo from Barr Realtors listing charges of $18 in late fees and $150 for cleaning and storage. 
A landlord's lien attaches to property only for unpaid rent and not for any other charges. See id. § 54.041. 
A landlord cannot condition the return of property on the payment of such charges as late fees, removal,
and storage. Id. The evidence overwhelmingly reveals that Perez and Mayes, agents of Barr Realtors,
misrepresented the rights and remedies of appellant under the lease agreement and also represented it had
a right that was actually prohibited by law. See DTPA § 17.46(b)(12); Tex. Prop. Code Ann. § 54.041
(West 1995). Such misrepresentations constitute a DTPA violation. Fina Supply, Inc. v. Abilene Nat'l
Bank, 726 S.W.2d 537, 540 (Tex. 1987).

 We conclude there is ample evidence to support the jury's finding that Barr Realtors
engaged in false, misleading or deceptive acts, or in an unconscionable action or course of action under the
DTPA; that finding is not so contrary to the overwhelming weight of the evidence as to be clearly unjust.


 C.  Producing Cause

 Barr Realtors also complains in its first point of error that there was no evidence or
insufficient evidence to establish that its acts constituted a producing cause of any damages to Sadei. In
order to recover damages under the DTPA, a plaintiff must show evidence that conduct on the part of the
defendant was a producing cause of the harm. DTPA § 17.50(a)(1); Doe, 907 S.W.2d at 481. Producing
cause is an "efficient, exciting or contributing cause, which in the natural sequence, produced injuries or
damages complained of, if any." Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 182 (Tex.
1995) (quoting Rourke v. Garza, 530 S.W.2d 794, 801 (Tex. 1975)). The plaintiff must show the
conduct in question was either a cause-in-fact or a substantial factor, not the only factor, in bringing about
the injury which would not have occurred otherwise. McClure v. Allied Stores of Tex., Inc., 608 S.W.2d
901, 903 (Tex. 1980); Bown v. Longo, 909 S.W.2d 618, 620 (Tex. App.--Fort Worth 1995, no writ). 
Therefore, there must be evidence that allows the fact finder to reasonably infer that the damages sued for
have resulted from the conduct of the defendant. Haynes & Boone, 896 S.W.2d at 182. Neither reliance
on the misrepresentation nor foreseeability must be shown. General Motors Corp. v. Saenz, 873 S.W.2d
353, 357 (Tex. 1993); Celotex Corp., Inc. v. Gracey Meadows Owners Ass'n, Inc., 847 S.W.2d 384,
389 (Tex. App.--Austin 1993, writ denied).

 As mentioned, Perez made an initial misrepresentation to Sadei that Barr Realtors had the
right to conduct a landlord's lien on his personal property and was considering an exercise of this right in
order to secure rent allegedly owed. This misrepresentation essentially led Sadei to believe that he could
not prevent appellant from exercising the lien; as a result, Sadei made no attempt to stop appellant from
taking his computers. After tendering some payment, Sadei made attempts to retrieve his property but was
told by an office manager that he owed more money, including charges for the storage of his property. 
Only after Sadei made two more payments were his computers returned.

 Prior to the seizure of his property, Sadei stored Magic One and corresponding data on
the hard drives of his computers. When the computers were returned after seventeen days, he discovered
that his programs had been erased. Under Browning-Ferris, Inc., there is sufficient evidence for the jury's
finding that the damage to Sadei's computer programs occurred while in the care, custody, and control of
appellant. Browning-Ferris, Inc., 865 S.W.2d at 927-28 (stating that if reasonable minds could differ
regarding the existence of a material fact, the jury finding, as to the existence of the fact, must be upheld).

 The misrepresentations of Barr Realtors began a sequence of unbroken events resulting in
the loss of Sadei's programs and data. Clearly, the actual misrepresentations by appellants did not directly
erase and damage the programs on appellee's computers. However, such a restricted interpretation of
"producing cause" would have the undesirable effect of preventing recovery under the DTPA for almost
any misrepresentation. Had the misrepresentations never been made, appellee would not have allowed
Barr Realtors to remove his computers and store them for over two weeks while he scrambled to make
payments. The rapid chain of events after the deceptive act would not have been set in motion and the
damage would never have occurred to Sadei's personal property while it was in the care, custody, and
control of Barr Realtors. These deceptive acts of appellant did more than provide conditions which made
the injury possible; they were a substantial factor in the loss of Sadei's programs and data. We hold there
is some evidence to support the finding that the wrongful acts of Barr Realtors under the DTPA were a
producing cause of injuries to Sadei. The finding is not so contrary to the great weight and preponderance
of the evidence as to be manifestly unjust or erroneous.

 Based on the above, we conclude the evidence is both legally and factually sufficient to
support the jury's finding that Barr Realtors violated the DTPA. Accordingly, we overrule appellant's first
point of error.


II.  EVIDENCE OF "KNOWINGLY"

 In its second point of error, appellant alleges that there was no evidence or insufficient
evidence that Barr Realtors knowingly engaged in any relevant conduct to support the award of additional
damages. To knowingly violate the DTPA is to act with actual awareness of the falsity, deception, or
unfairness of the act or practice giving rise to the consumer's claim; actual awareness may be inferred
where objective manifestations indicate that person acted with actual awareness. Century 21 Real Estate
Corp. v. Hometown Real Estate Co., 890 S.W.2d 118, 128 (Tex. App.--Texarkana 1994, writ denied);
DTPA § 17.45(9). Therefore, such knowing violations may be proven through circumstantial evidence
within the context of the transaction. Texas Cookie Co. v. Hendricks & Peralta, Inc., 747 S.W.2d 873,
881 (Tex. App.--Corpus Christi 1988, writ denied). Sadei had the burden to prove that appellant knew
that the representations regarding its rights under the law were false.

 Under the limiting instructions, the jury was to consider only evidence that appellant
knowingly made representations to Sadei about its rights under the lease or engaged in an unconscionable
action or course of action. Perez testified that prior to executing the landlord's lien, he consulted a
procedure book because he was unfamiliar with the proper lien process. He compared the requirements
under Texas law to Sadei's written lease with Action Rentals--the only written lease on file--and found
that it did not meet the statutory requirements for conducting a legal landlord's lien on appellee's property. 
Perez then met with David Barr, the owner, and reported his findings. Barr disregarded the impropriety
of the lien and ordered Perez to execute a lien and seize the property. Perez informed Sadei that Barr
Realtors had rights and remedies which it clearly did not; through his self-acquired knowledge of the lien
process, Perez knew he was offering false representations to the appellee. Furthermore, David Barr
testified that he is member of the Texas Apartment Association and that he attends seminars to keep up to
date with real estate law. The jury could reasonably have believed that Barr Realtors knew it was
misrepresenting its rights to Sadei.

 We conclude there is some evidence to support the jury finding that Barr Realtors
knowingly engaged in conduct in violation of the DTPA; this finding is not so contrary to the overwhelming
weight of the evidence as to be unjust. We overrule appellant's second point of error.


III.  DAMAGES AND REMITTITUR

 Following a finding of liability, the jury awarded Sadei actual damages of $50,000, mental
anguish damages of $10,000, mandatory additional damages of $2,000, discretionary additional damages
of $118,000, attorney's fees of $60,000, and $500 under section 54.046 of the Texas Property Code,
resulting in a total award of $240,500. After entry of judgment, the trial court ordered a remittitur that
reduced Sadei's award by $160,000. Appellee submitted the remittitur, resulting in a judgment of
$80,500. In points of error three through five, Barr Realtors claims that there was legally and factually
insufficient evidence to support the jury's award of any damages and factually insufficient evidence to
support the remitted damages. In a cross-point, Sadei complains the evidence sufficiently supported the
jury's award, therefore the trial court erred in ordering remittitur. We need only discuss whether remittitur
was proper because such an analysis necessarily determines all other points of error regarding damages.

 In reviewing whether remittitur is proper, the standard of review is factual sufficiency of the
evidence. See Snoke v. Republic Underwriters Ins. Co., 770 S.W.2d 777, 777-78 (Tex. 1989); Larson
v. Cactus Utils. Co., 730 S.W.2d 640, 641 (Tex. 1987). In determining whether damages awarded by
the jury are excessive, we examine all the evidence in the record to determine whether sufficient evidence
supports the damage award, remitting only if some portion is so factuallinsufficient or so against the great
weight and preponderance of the evidence as to be manifestly unjust. Pope v. Moore, 711 S.W.2d 622,
623-24 (Tex. 1986).


A.  Actual Damages

 Appellant complains there was no evidence or factually insufficient evidence of the value
of appellee's "lost business enterprise"; underlying this challenge to the legal and factual sufficiency of the
evidence is appellant's mistaken conclusion that market value or lost profits are the only proper measures
of actual damages sustained by Sadei. The supreme court has liberally defined actual damages under the
DTPA as "the total loss sustained as a result of the deceptive trade practice." Kish v. Van Note, 692
S.W.2d 463, 466 (Tex. 1985). In DTPA cases, Texas courts have been flexible in approving various
measures of damages to allow plaintiffs to recover the greatest amount of actual damages alleged and
established by proof to have been caused by the defendant's conduct. See, e.g., Henry S. Miller Co. v.
Bynum, 836 S.W.2d 160, 162-63 (Tex. 1992) (recognizing lost capital investment); Kish, 692 S.W.2d
at 466-68 (damages for removing defective product); White v. Southwestern Bell Telephone Co., 651
S.W.2d 260, 262-63 (Tex. 1983) (lost profits); Smith v. Baldwin , 611 S.W.2d 611, 617 (Tex. 1981)
(interest on indebtedness); Village Mobile Homes, Inc. v. Porter, 716 S.W.2d 543, 550 (Tex.
App.--Austin 1986, writ ref'd n.r.e.) (loss for improvements made); see also Mead v. Johnson Group,
Inc., 615 S.W.2d 685, 687 (Tex. 1981) (loss of credit);. 

 Sadei's amended petition sought to recover the reasonable market value of his lost
programs, or alternatively, the replacement value of the programs. Appellee testified that he had spent
over 14,000 hours of work creating the Magic One program which consisted of over 125,000 lines of
code. Appellee's expert testified that the average computer programmer earns $25 to $200 per hour
generating lines of code. The loss of Magic One resulted in a loss of time for Sadei, valued at anywhere
between $350,000 to $2,800,000, both amounts far greater than the jury's award of $50,000. Appellee
testified that his out-of-pocket expenses were approximately $150,000 during the creation of Magic One. (3) 
See W.O. Bankston Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 1988) (out-of-pocket expenses
a proper measure of damages under DTPA). Expert testimony revealed that it would cost between
$300,000 and $500,000 to recreate a program the type and magnitude of Magic One. This constitutes
some evidence of the replacement value of the programs that Sadei lost due to the conduct of Barr
Realtors. While Sadei's evidence may not have established the actual market value of Magic One, or
sufficiently calculated his lost profits, these are not exclusive measures of actual damages under the DTPA. 
Courts will approve various measures of damages to compensate a consumer for the actual loss sustained
by a defendant's deceptive practice. Sadei sought the replacement value of the programs lost; we hold that
there is legally sufficient evidence of a replacement value of $50,000 for Sadei's loss. 

 Appellee also presented evidence that certain people in the software industry had seen
Magic One and had expressed an interest in purchasing or marketing the program. Additionally, Sadei
temporarily lost the use of his computers from July 9 to July 26, 1993. And finally, all of Sadei's financial
records covering a four-year period were permanently destroyed. We overrule appellant's no-evidence
point of error as to actual damages.

 Barr Realtors presented evidence in rebuttal of Sadei's actual damages; the jury, however,
is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See
Mid-South Bottling Co. v. Cigainero, 799 S.W.2d 385, 390 (Tex. App.--Texarkana 1990, writ
denied). Although appellant may believe that Sadei lost nothing of value, after hearing ample testimony the
jury evidently believed otherwise. This Court is not a fact-finder and may not pass upon the credibility of
the witnesses or substitute its judgment for that of the jury. Id. Considering the evidence in the light most
favorable to the verdict, the $50,000 award of actual damages is not so contrary to the overwhelming
weight of the evidence as to be manifestly unjust. See Pope, 711 S.W.2d at 623-24. We overrule the
factual-sufficiency challenge to the evidence supporting the award of actual damages.


B.  Mental Anguish Damages

 Mental anguish damages produced by a deceptive trade practice or an unconscionable
course of action are recoverable. DTPA § 17.50(b)(1); Henry S. Miller Co. v. Bynum, 836 S.W.2d 160,
162 (Tex. 1992); Kish v. Van Note, 692 S.W.2d 463, 466 (Tex. 1985). The plaintiff need not show a
willful or grossly negligent violation; a knowing violation is sufficient to recover mental anguish damages. 
See Boyles v. Kerr, 855 S.W.2d 593, 598 (Tex. 1993); Sanchez v. Guerrero, 885 S.W.2d 487, 494
(Tex. App.--El Paso 1994, no writ). We have already found sufficient evidence to support the jury's
conclusion that appellant knowingly violated the DTPA; therefore, the jury's award of $10,000 for Sadei's
mental anguish is proper if supported by factually sufficient evidence.

 The process of awarding damages for mental anguish is difficult because mental anguish
constitutes a subjective, non-pecuniary loss. Worsham Steel Co. v. Arias, 831 S.W.2d 81, 85 (Tex.
App.--El Paso 1992, no writ). While the impossibility of any exact evaluation of mental anguish requires
that juries be given a measure of discretion in finding damages, that discretion is limited. Saenz v. Fidelity
& Guaranty Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996). Juries must find an amount that
"would fairly and reasonably compensate" for the loss. Id. Compensation can only be for mental anguish
that causes "substantial disruption in . . . daily routine" or "a high degree of mental pain and distress" that
is "more than mere worry, anxiety, vexation, embarrassment, or anger." See Parkway Co. v. Woodruff,
901 S.W.2d 434, 444 (Tex. 1995). Damages cannot be awarded without direct evidence of the nature,
duration, or severity of the plaintiff's anguish. Id.

 Sadei testified that the Magic One program was like a child to him; when he discovered
that his programs had been destroyed, he suffered "grief and despair." He further testified that he was still
suffering over the loss of Magic One at the time of trial and that he wanted to move on, but it was difficult;
his sleeping habits had been radically disturbed since the loss of Magic One, resulting in bad dreams and
loss of sleep. Appellee testified that words could not explain how horrible his mental anguish was and that
"all his life, everything" was on those computers.

 The jury in this case was in the unique position to evaluate Sadei's testimony including his
voice modulation, facial reactions and gestures, which are as much a part of a witness's testimony as the
words he speaks. See Herbert v. Herbert, 754 S.W.2d 141, 147 (Tex. 1988); City of Ingleside v.
Kneuper, 768 S.W.2d 451, 460 (Tex. App.--Austin 1989, writ denied). Considering the evidence in the
light most favorable to the verdict, the $10,000 award for mental anguish was not so excessive as to be
manifestly unjust. See Pope, 711 S.W.2d at 623-24.


C.  Additional Damages

 The trial court rendered judgment on the verdict awarding Sadei $118,000 in additional
damages. Appellant claims the evidence is factually insufficient to support both this award and the remitted
award of $38,000; appellee asks this Court to reinstate the $118,000.

 Additional damages are similar to punitive damages in that they serve to punish
the wrongdoer and provide an example to others. Pace v. State, 650 S.W.2d 64, 65 (Tex. 1985). The
amount of additional damages awarded rests largely in the discretion of the jury. Kraus v. Alamo Nat'l
Bank, 586 S.W.2d 202, 208 (Tex. Civ. App.--Waco 1979), aff'd, 616 S.W.2d 908 (Tex. 1981). When
the jury determines that the defendant knowingly engaged in a deceptive act or practice under the DTPA,
it may award up to three times the amount of actual damages as discretionary additional damages. See Act
of May 22, 1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex. Gen. Laws 1490, 1491. (4)

 The jury specifically found that Barr Realtors engaged in false or misleading and
unconscionable actions, that it did so knowingly, and that Sadei suffered actual and mental anguish damages
as a result. The conversation between the owner of Barr Realtors and Perez evinces a conscious
indifference to Sadei's rights. Furthermore, the legislature has allowed additional damages in an amount
up to three times the actual damages. The award of $118,000 is well within the statutory cap and is not
so contrary to the great weight and preponderance of the evidence as to be manifestly unjust or erroneous.


D. Attorney's Fees

 Sadei also claims the trial court erred in remitting the jury's award of $60,000 for attorney's
fees. Sadei's attorney presented evidence of the contingency-fee contract and additionally offered
evidence of factors relevant to the reasonableness and necessity of a fee: (1) time spent on the case; (2)
type of labor involved; (3) usual hourly rate; (4) customary rate in locale; (5) length of professional
relationship; (6) experience and reputation of attorney; (7) inability to take on other cases; and (8) that any
fee was contingent upon a favorable verdict for the client. See Arthur Andersen & Co. v. Perry Equip.
Corp., 945 S.W.2d 812, 818 (Tex. 1997). (5) The charge asked the jury to determine reasonable and
necessary attorney's fees in either a dollar amount or by a percentage of appellee's recovery. The jury
specifically found that thirty-three and one-third percent of appellee's recovery in damages was a
reasonable and necessary amount for legal services. Appellant does not challenge the charge submitted
to the jury nor the evidence to support the award of necessary and reasonable attorney's fees. We
recognize the jury charge submitted here was incorrect under Arthur Andersen. See id. at 818-19
("plaintiff in DTPA action must ask jury to award fees in a specific dollar amount, not as a percentage of
the judgment"). However, Barr Realtors has not raised a complaint regarding the submission of this issue
to the jury and any error is waived. Because we reinstate the damage award of $180,000, we similarly
reinstate the award for attorney's fees reflected in the jury's verdict.



CONCLUSION 

 The evidence supporting the jury's award of actual, mental anguish, additional damages,
and attorney's fees is not so contrary to the overwhelming weight of the evidence as to be manifestly unjust. 
We overrule appellant's points of error three through five and sustain appellee's cross-point of error that
remittitur was improper. We reverse the order of remittitur and reinstate the judgment on the verdict
awarding appellee $50,000 in actual damages, $10,000 in mental damages, $2,000 in mandatory additional
damages, $118,000 in discretionary damages, $500 under the Property Code, and $60,000 in attorney's
fees for a total award of $240,500. (6)



 

 Bea Ann Smith, Justice

Before Chief Justice Yeakel, Justices Kidd and B. A. Smith

Reversed and Rendered

Filed: June 25, 1998

Do Not Publish

1. Tex. Prop. Code Ann. §§ 54.041-.046 (West 1995); Tex. Penal Code Ann. §§ 31.03, 33.02 (West
1994 & Supp. 1998); Tex. Civ. Prac. & Rem. Code Ann. §§ 41.003, 134.005, 143.001-.002 (West
1997); Tex. Bus. & Com. Code Ann. (DTPA) §§ 17.41-.63 (West 1987 & Supp. 1998). The DTPA
statute in effect during the relevant time was Act of May 22, 1989, 71st Leg., R.S., ch. 380, § 2, 1989
Tex. Gen. Laws 1490, 1491. The current DTPA statute is substantially similar and we refer to those
provisions for convenience except where noted.
2. Sadei initially rented his apartment through Action Rentals, which is not a party to this suit, in January
1992. Sadei and Action signed a written lease agreement for a month-to-month rental at a low rate of
$150 per month. In exchange for the reduced rent, Sadei, with the use of his own funds, made repairs to
vacant units with the understanding that Action would reimburse his expenses. At the completion of the
repairs, Sadei's expenses totaled $2,943.


 In May 1992, Sadei and Action Rentals entered into a second lease agreement effective July 1,
1992 through December 31, 1992. Pursuant to this contract, Sadei's rent would be deducted from the
$2,943 owed him for the improvements to the complex. With the expiration of the second lease, Sadei
claimed he was still owed a balance of $1,743. In January 1993, Sadei and Action entered into an oral
lease providing that Sadei's rent was $150 a month.


 In May 1993, Barr Realtors assumed management of the complex in question. David Barr,
President of Barr Realtors, testified that when appellant took over management, Sadei was being charged
a rental rate of $150 per month. Assuming May rent had already been deducted, Sadei claimed he was
owed a balance of $993 for improvements. At this point, David Perez, the residential property manager
for Barr Realtors and Sadei entered into negotiations: Perez wanted a six-month-minimum written lease
from Sadei who wished to remain a month-to-month tenant.
3. Of the $150,000, his family had loaned him $85,000 in cash, and two other witnesses testified that
they had loaned appellee over $25,000.
4. The current DTPA provision replaces "actual damages" with "economic damages." DTPA §
17.50(b)(1).
5. Factors that a factfinder should consider when determining the reasonableness of a fee include: (1)
the time and labor required, the novelty and difficulty of the questions involved, and the skill required to
perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment
will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar
services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or
by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the
experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the
fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been
rendered. Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997).
6. The award of $500 under section 54.046 of the Texas Property Code was neither remitted nor
challenged. Because this appeal does not affect Sadei's recovery of the $500, we do not address it but
include it in the total award.


 and sustain appellee's cross-point of error that
remittitur was improper. We reverse the order of remittitur and reinstate the judgment on the verdict
awarding appellee $50,000 in actual damages, $10,000 in mental damages, $2,000 in mandatory additional
damages, $118,000 in discretionary damages, $500 under the Property Code, and $60,000 in attorney's
fees for a total award of $240,500. (6)



 

 Bea Ann Smith, Justice

Before Chief Justice Yeakel, Justices Kidd and B. A. Smith

Reversed and Rendered

Filed: June 25, 1998

Do Not Publish

1. Tex. Prop. Code Ann. §§ 54.041-.046 (West 1995); Tex. Penal Code Ann. §§ 31.03, 33.02 (West
1994 & Supp. 1998); Tex. Civ. Prac. & Rem. Code Ann. §§ 41.003, 134.005, 143.001-.002 (West
1997); Tex. Bus. & Com. Code Ann. (DTPA) §§ 17.41-.63 (West 1987 & Supp. 1998). The DTPA
statute in effect during the relevant time was Act of May 22, 1989, 71st Leg., R.S., ch. 380, § 2, 1989
Tex. Gen. Laws 1490, 1491. The current DTPA statute is substantially similar and we refer to those
provisions for convenience except where noted.
2. Sadei initially rented his apartment through Action Rentals, which is not a party to this suit, in January
1992. Sadei and Action signed a written lease agreement for a month-to-month rental at a low rate of
$150 per month. In exchange for the reduced rent, Sadei, with the use of his own funds, made repairs to
vacant units with the understanding that Action would reimburse his expenses. At the completion of the
repairs, Sadei's expenses totaled $2,943.


 In May 1992, Sadei and Action Rentals entered into a second lease agreement effective July 1,
1992 through December 31, 1992. Pursuant to this contract, Sadei's rent would be deducted from the
$2,943 owed him for the improvements to the complex. With the expiration of the second lease, Sadei
claimed he was still owed a balance of $1,743. In January 1993, Sadei and Action entered into an oral
lease providing that Sadei's rent was $150 a month.


 In May 1993, Barr Realtors assumed management of the complex in question. David Barr,
President of Barr Realtors, testified that when appellant took over management, Sadei was being charged
a rental rate of $150 per month. Assuming May rent had already been deducted, Sadei claimed he was
owed a balance of $993 for improvements. At this point, David Perez, the residential property manager
for Barr Realtors and Sadei entered into negotiations: Perez wanted a six-month-minimum written lease
from Sadei who wished to remain a month-to-month tenant.
3. Of the $150,000, his family had loaned him $85,000 in cash, and two other witnesses testified that
they had loaned appellee over $25,000.
4. The current DTPA provision replaces "actual damages" with "economic damages." DTPA §
17.50(b)(1).
5. Factors that a factfinder should consider when determining the reasonableness of a fee include: (1)
the time and labor required, the novelty and difficulty of the questions involved, and the skill required to
perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment
will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar
services; (4) the amount involved